# Illinois Official Reports

## Appellate Court

---

***Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669**

---

| | |
|---|---|
| Appellate Court Caption | FREDDIE WINTERS JR., Plaintiff-Appellant, v. MIMG LII ARBORS AT EASTLAND, LLC, d/b/a Arbors at Eastland, and CHANGING SEASONS LAWN LANDSCAPE, LLC, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-17-0669 |
| Filed | August 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 15-L-12; the Hon. Paul G. Lawrence, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Laura Castagna, of Kelly Law Offices, P.C., of Bloomington, for appellant.<br><br>Danielle N. Malaty, of Kopka Pinkus Dolin PC, of Chicago, for appellee MIMG LII Arbors at Eastland, LLC.<br><br>Barbara Snow Mirdo and Brian P. Thielen, of Thielen, Foley & Mirdo, LLC, of Bloomington, for other appellee. |

Panel    JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment and opinion.

**OPINION**

In June 2015, plaintiff, Freddie Winters Jr., filed a two-count complaint against MIMG LII Arbors at Eastland, LLC, and Changing Seasons Lawn Landscape, LLC (hereinafter, Arbors and Changing Seasons, respectively). Plaintiff's complaint stated that he was a tenant of Arbors and asserted that Changing Seasons had a contractual obligation to clear snow from the apartment complex. Plaintiff's complaint further asserted that in January 2014, Changing Seasons pushed snow from Arbors' parking lot onto a sidewalk, with the result that the sidewalk was "blocked by a large mound of snow" that "forced the [p]laintiff to navigate around the snow pile" and caused him to "slip and [fall] due to the unnatural accumulation of snow."

Count I of plaintiff's complaint alleged that Arbors had a duty to exercise reasonable care for the safety of the tenants upon its property and that it breached this duty. Count II alleged that Changing Seasons owed plaintiff a duty that it breached when it negligently placed the pile of snow on the sidewalk.

Arbors and Changing Seasons each filed motions for summary judgment in which each argued that it owed no duty to plaintiff because the snow pile was an open and obvious condition. In March 2017, plaintiff filed responses to both motions for summary judgment, arguing that genuine issues of material fact remained as to whether the snow pile was open and obvious. Alternatively, plaintiff argued that (1) the deliberate encounter exception applied or (2) he was owed a duty under a traditional duty analysis.

In April 2017, the trial court granted the motions for summary judgment. The court concluded that "plaintiff has failed to raise a genuine issue of material fact *** on the issue of duty." The court further concluded that "the large pile of snow and ice on which plaintiff fell was open and obvious as a matter of law and that the deliberate encounter exception does not apply to the facts of this case."

Plaintiff appeals, arguing only that the trial court erred by granting summary judgment because (1) a genuine issue of material fact remained as to whether the unnatural accumulation of snow and ice was an open and obvious condition, (2) a genuine issue of material fact existed as to whether the deliberate encounter exception to the open and obvious rule applied, and (3) plaintiff is owed a duty as a matter of law under a traditional duty analysis. We disagree and affirm.

## I. BACKGROUND
### A. The Complaint

In June 2015, plaintiff filed a two-count first amended complaint against Arbors and Changing Seasons. Plaintiff's complaint stated that he was a tenant of an apartment complex

that Arbors owned and operated and asserted that Changing Seasons had a contractual obligation with Arbors to clear snow from the parking lot.

¶ 9     Plaintiff's complaint further asserted that in January 2014, Changing Seasons pushed snow from Arbors' parking lot onto a sidewalk, resulting in the snow completely covering a portion of the sidewalk. The complaint further alleged that in January 2014, plaintiff left his apartment to walk to Arbors' on-site laundry facility, which was "blocked by a large mound of snow" that "forced the [p]laintiff to navigate around the snow pile," causing him to "slip and [fall] due to the unnatural accumulation of snow." The complaint also asserted that he suffered serious physical injury.

¶ 10    Count I of plaintiff's complaint alleged that Arbors had a duty to exercise reasonable care for the safety of the tenants upon its property and that it was negligent by (1) failing to supervise snow removal from the parking lot so as not to create adverse conditions for its tenants, (2) allowing a snow pile created from snow removal operations to block the sidewalk, (3) failing to warn plaintiff of a dangerous condition on the property, (4) failing to adequately inspect the premises to prevent an unnatural accumulation of snow, (5) failing to provide a safe and alternative path from plaintiff's building to the on-site laundry facility, and (6) allowing conditions to exist on the property that imperiled the safety of one lawfully on the premises. Plaintiff further asserted that these breaches caused his injuries.

¶ 11    Count II alleged that Changing Seasons owed plaintiff a duty of reasonable care when it performed snow removal services. Plaintiff contended that Changing Seasons breached this duty by (1) failing to properly remove snow from the Arbors parking lot; (2) failing to properly supervise its agents, servants, and/or employees during snow removal operations so as not to create adverse conditions for the apartment complex's tenants; (3) pushing a snow pile from the parking lot onto the sidewalk area during snow removal operations; and (4) allowing a snow pile created during snow removal operations to block the sidewalk. Plaintiff asserted that he was injured because of these breaches.

¶ 12                        B. Arbors' and Changing Seasons' Answers

¶ 13    In July 2015, Arbors filed an answer to plaintiff's complaint, which, in pertinent part, asserted the affirmative defenses of (1) comparative negligence and (2) the open and obvious doctrine. In December 2016, Changing Seasons filed an answer to the complaint, asserting the affirmative defense of contributory negligence.

¶ 14                        C. Depositions and Other Evidence

¶ 15    During depositions, the parties often used an image of Arbors from Google Maps to illustrate the layout of the apartment complex. Similarly, we take judicial notice of an image of Arbors from Google Maps for the purpose of better understanding the statements made during depositions. *People v. Clark*, 406 Ill. App. 3d 622, 632-34, 940 N.E.2d 755, 766-67 (2010) (the Second District took judicial notice of an image from Google Maps to better understand statements made at trial). To better aid the reader, we have labeled the relevant locations and objects and included a compass rose.



3/28/2018      Arbors At Eastland Apartments - Google Maps

¶ 16                                           1. *The Plaintiff*

¶ 17         Plaintiff testified that he was a long-term Arbors' tenant and was familiar with the layout of the apartment complex. He lived in building 9, which forms an "L shape" with building 10. Building 9 runs west to east, and building 10 runs north to south. The laundry facility was in the northern end of building 10.

¶ 18         Plaintiff testified that on the afternoon of January 19, 2014, he left his apartment for the laundry facility, exiting on the north side of building 9. He then proceeded west on the sidewalk, and when that sidewalk ended, he proceeded north upon the sidewalk that runs parallel with building 10. He testified that there was a large pile of snow on this northern sidewalk. He acknowledged that he saw this pile of snow before reaching it, and his visibility was not compromised. Plaintiff testified that there was a cutout in the middle of the snow pile, where it appeared other people had walked through. With his laundry basket in hand, plaintiff walked through the cutout in the snow pile. He testified that he was able to see where he was stepping while doing so, and he knew he was walking on snow and ice. Plaintiff testified that while walking through the snow pile, he fell and broke his ankle.

¶ 19         Plaintiff acknowledged that he was aware at the time of the accident that there were other ways to reach the laundry facility from his apartment. One alternative route was to exit the north side of building 9, walk west on the sidewalk, and then, once that sidewalk ended, walk

south on the sidewalk in between building 9 and building 10. This path would eventually end with plaintiff entering the western side building 10.

¶ 20 A second alternative path would be to exit the south side of building 9, walk west on the sidewalk, and eventually enter building 10 on the western side. Plaintiff admitted that these alternative paths were an "option."

¶ 21 2. *The Witness*

¶ 22 Carmen Ashby, a witness to the accident, testified that she was at Arbors on January 19, 2014, to visit her daughter. She looked away after seeing plaintiff walking with a basket of clothes. She heard a "pop," and when she turned around, plaintiff had fallen. She stated she was approximately 30 to 40 feet away from plaintiff. She went over to check on him because he was not moving. She then called emergency services because plaintiff had a bone protruding from his leg.

¶ 23 3. *The Owner of Changing Seasons*

¶ 24 Brandt Bollmann testified that he is the owner of Changing Seasons. During January 2014, his company had a contract to clear snow from the "drive lanes" of the Arbors' parking lots. He stated that his company was not required to clear snow from the sidewalks but could do so for an extra charge.

¶ 25 Brandt stated that Arbors had designated areas where Changing Seasons was to pile snow. By December 2013, Brandt had already filled the designated areas with snow. He then gave Stephanie Lawrence, the Arbors' manager, the option of either hauling the snow away or finding other locations to push snow. Brandt testified that Lawrence said to push snow "anywhere that we could viably put snow outside of blocking parking spaces and parking lots."

¶ 26 Brandt stated that he and an employee cleared the Arbors' parking lot during the early morning of January 19, 2014. His employee drove a skid loader to push the snow, and he followed behind in a truck spreading salt. He admitted that his employee pushed snow from the parking lot onto the sidewalk in front of building 10. Brandt believed this was an "acceptable result" because Lawrence "basically told us that anywhere we could put snow to go ahead and put it [there]." Brandt further stated that Arbors' "maintenance crew [was] responsible for sidewalks, so [the pile of snow] was not our responsibility." Brandt later acknowledged that Lawrence did not specifically say to push snow on the sidewalks and that, within the parameters of Lawrence's instructions, his employee had discretion of where to push the snow.

¶ 27 4. *The Maintenance Technician*

¶ 28 Eugene Fordham testified that he was an Arbors' maintenance technician. He works with three other people, and during the early morning of January 19, 2014, their job was to remove snow from the apartment's sidewalks and stoops. He further explained that Changing Seasons clears snow from the parking lots.

¶ 29 Fordham testified that Changing Seasons pushed a "big pile" of snow onto the sidewalk on the eastern side of building 10. He explained that this pile covered the entire width of a section of the sidewalk and was so large and hard that his team could not remove it with snowblowers. (A snowblower is a machine used to clear snow from sidewalks or driveways.) The maintenance technicians did not inform the property manager of the condition because it was a

Sunday. Fordham reported the condition to the property manager on January 20, 2014, which was a Monday.

### 5. *The Arbors' Property Manager*

Lawrence was the Arbors' property manager during January 2014. She testified that the Arbors' maintenance technicians were responsible for clearing snow from the sidewalks and entryways of the property. The Arbors' parking lot and sidewalks were common areas, and Changing Seasons was contractually obligated to clear snow from the Arbors' parking lot. She further noted that, for an extra charge, Changing Seasons could clear snow from the Arbors' sidewalk.

On January 20, 2014, Lawrence became aware of the pile of snow at issue. She called Changing Seasons that afternoon to "push the pile of snow further back [into] the yard instead of blocking the sidewalk." Changing Seasons charged Arbors $404.50 to clear the sidewalk. Lawrence denied that she ever authorized Changing Seasons to push snow onto the sidewalk. She further testified that Changing Seasons never told her that it piled snow onto the sidewalk.

### 6. *Other Evidence*

The parties also submitted other evidence to the trial court, including a layout of the apartment complex, pictures of the snow pile, pictures of the sidewalk, medical records, Arbors' contract for snow removal services with Changing Seasons, plaintiff's lease with Arbors, and various other documents.

### D. The Motions for Summary Judgment

In December 2016, Changing Seasons filed a motion for summary judgment, arguing that it owed no duty to plaintiff because the snow pile was an open and obvious condition. In February 2017, Arbors filed a motion for summary judgment, also arguing that it owed no duty to plaintiff because the snow pile was an open and obvious condition.

In March 2017, plaintiff filed responses to both motions for summary judgment, arguing that genuine issues of material fact remained as to whether the snow pile was an open and obvious condition. Alternatively, assuming the snow pile was an open and obvious condition, plaintiff argued that (1) the deliberate encounter exception applied or (2) he was still owed a duty under a traditional duty analysis. Plaintiff also argued to the trial court that Changing Seasons was not entitled to raise the open and obvious defense because it was not an owner or occupier of the property. We note that on appeal, plaintiff does not argue that Changing Seasons was not an owner or occupier of the property and was therefore not entitled to raise the open and obvious defense.

### E. The Trial Court's Order Granting Summary Judgment

In April 2017, the trial court granted both defendants' motions for summary judgment. The court concluded that "plaintiff has failed to raise a genuine issue of material fact *** on the issue of duty." The court further concluded that "the large pile of snow and ice on which plaintiff fell was open and obvious as a matter of law and that the deliberate encounter exception does not apply to the facts of this case."

¶ 40    This appeal followed.

¶ 41                                   II. ANALYSIS

¶ 42    Plaintiff appeals, arguing only that the trial court erred by granting summary judgment because (1) a genuine issue of material fact remained as to whether the unnatural accumulation of snow and ice was an open and obvious condition, (2) a genuine issue of material fact existed as to whether the deliberate encounter exception to the open and obvious rule applied, and (3) plaintiff is owed a duty as a matter of law under a traditional duty analysis. We disagree.

¶ 43                  A. Summary Judgment and the Standard of Review

¶ 44    Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). When ruling on a motion for summary judgment, courts consider all of the evidence in the light most favorable to the nonmoving party. *Country Preferred Insurance Co. v. Groen*, 2017 IL App (4th) 160028, ¶ 17, 69 N.E.3d 911. To survive a motion for summary judgment, the plaintiff must present a factual basis that would arguably entitle him to a judgment. *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 38, 33 N.E.3d 288. If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is the proper result. *Id.* A court should grant summary judgment only if the right of the moving party is clear and free from doubt. *Evans v. Brown*, 399 Ill. App. 3d 238, 243, 925 N.E.2d 1265, 1270 (2010). A trial court's entry of summary judgment is reviewed *de novo*. *Id.* at 244.

¶ 45    To state a cause of action for negligence, a plaintiff must allege that (1) the defendant owed plaintiff a duty, (2) the defendant breached this duty, and (3) that this breach was the proximate cause of plaintiff's resulting injuries. *Lucasey v. Plattner*, 2015 IL App (4th) 140512, ¶ 27, 28 N.E.3d 1046. If no duty exists, then summary judgment for the defendant is proper. *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 17, 923 N.E.2d 854, 857 (2010).

¶ 46                            B. The Existence of a Duty
¶ 47                          1. *The Four Traditional Duty Factors*
¶ 48    Whether the law imposes a duty of reasonable care upon a defendant for the benefit of the plaintiff depends upon the nature of their relationship. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18, 965 N.E.2d 1092. When determining whether a duty exists, courts primarily consider the four traditional duty factors. *Id.* These four duty factors are (1) the likelihood of injury, (2) the reasonable foreseeability of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* Courts also consider public policy when determining whether a duty exists. *Id.* ¶ 17. If a duty is found to exist, the general rule is that a defendant owes his or her invitees and licensees a duty of reasonable care under the circumstances. *Grant v. South Roxana Dad's Club*, 381 Ill. App. 3d 665, 673, 886 N.E.2d 543, 551 (2008).

¶ 49                              2. *The Open and Obvious Doctrine*

¶ 50        The open and obvious doctrine affects the first and second duty factors. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 19, 21 N.E.3d 684; *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1056, 930 N.E.2d 511, 523 (2010).

¶ 51        A condition on the land is "open and obvious" when a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved. *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 42, 974 N.E.2d 914. Normally, the open and obvious doctrine applies to conditions like fire or bodies of water; however, it can extend to other conditions such as sidewalk defects. *Burns v. City of Chicago*, 2016 IL App (1st) 151925, ¶ 45, 59 N.E.3d 846.

¶ 52        The two exceptions to the open and obvious doctrine are (1) the distraction exception and (2) the deliberate encounter exception. *Sollami v. Eaton*, 201 Ill. 2d 1, 15, 772 N.E.2d 215, 223 (2002). The distraction exception applies when the possessor of land has reason to expect that his or her invitees or licenses may be distracted and will therefore fail to discover or protect against the open and obvious danger. *Id.* (citing Restatement (Second) of Torts § 343A(1) (1965)). This exception will apply only when evidence exists from which the court can infer that the plaintiff was actually distracted. *City of Centralia*, 2014 IL 116998, ¶ 22.

¶ 53        The deliberate encounter exception applies when the possessor of land has reason to expect that his or her invitee or licensee will proceed to encounter the known or obvious danger because a reasonable person in plaintiff's position would do so. *Sollami*, 201 Ill. 2d at 15 (citing Restatement (Second) of Torts § 343A(1) cmt. f, at 220 (1965)). The deliberate encounter exception is usually applied in cases involving some kind of economic compulsion. *Id.* at 16. However, economic compulsion is not a *per se* requirement of the deliberate encounter exception. *Id.*; *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 725-26, 935 N.E.2d 644, 656 (2010).

¶ 54                         3. *The Application of the Open and Obvious Doctrine*

¶ 55        When a condition is open and obvious, the first duty factor weighs against imposing a duty because courts assume that persons encountering potentially dangerous conditions will appreciate and avoid the risk, making the likelihood of injury slight. *City of Centralia*, 2014 IL 116998, ¶ 35. Likewise, when a condition is open and obvious, the second factor weighs against imposing a duty "because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." *Id.*

¶ 56        Conversely, when an exception to the open and obvious doctrine applies, the outcome of the duty analysis with respect to the first two factors is "reversed." (Internal quotation marks omitted.) *Id.* ¶ 20. The outcome is reversed because "where an invitee is likely either to fail to apprehend the danger because he is distracted or to deliberately encounter the danger because of a lack of a better alternative, an injury is both likely and foreseeable." *Belluomini v. Stratford Green Condominium Ass'n*, 346 Ill. App. 3d 687, 692, 805 N.E.2d 701, 705 (2004) (cited with approval in *City of Centralia*, 2014 IL 116998, ¶ 20). Accordingly, the first and second factors will weigh toward imposing a duty when an exception to the open and obvious doctrine applies.

¶ 57        The third and fourth factors take into account, as a matter of policy, the efficient placement of the burden of avoiding the injury. *Belluomini*, 346 Ill. App. 3d at 692. The appropriate

weight given to these four factors depends upon the unique circumstances of an individual case. See *Simpkins*, 2012 IL 110662, ¶ 18.

¶ 58                                                      4. *The Standard of Review*

¶ 59        When no dispute of material fact exists, whether a condition is open and obvious is a question of law. *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 17, 938 N.E.2d 584, 587 (2010). Likewise, when there is no dispute of material fact, whether an exception to the open and obvious doctrine applies is a question of law. *Morrissey*, 404 Ill. App. 3d at 728. Whether a duty exists in a particular case is a question of law this court reviews *de novo*. *Simpkins*, 2012 IL 110662, ¶ 14.

¶ 60                                                            C. This Case

¶ 61        In this case, plaintiff argues (1) a genuine issue of material fact remained as to whether the unnatural accumulation of snow and ice was an open and obvious condition, (2) a genuine issue of material fact existed as to whether the deliberate encounter exception to the open and obvious rule applied, and (3) plaintiff is owed a duty as a matter of law under a traditional duty analysis. We disagree.

¶ 62                                    1. *The Pile of Snow Was Open and Obvious*

¶ 63        A condition on the property is "open and obvious" when a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk. *Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 42. When there is no dispute about the physical nature of the condition, whether a condition is open and obvious is a question of law. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34, 980 N.E.2d 58.

¶ 64        In this case, no one disputed the physical nature of the snow pile. Plaintiff testified that he slipped on a large pile of snow on the sidewalk. Plaintiff stated that he saw this pile of snow but decided to walk on it anyway. He further stated that he knew he was walking upon ice and snow.

¶ 65        Fordham, the maintenance technician, testified that Changing Seasons pushed a "big pile" of snow onto the sidewalk. He stated the snow pile was so big and hard that his team could not remove it with snowblowers. The owner of Changing Seasons admitted that his employee pushed a pile of snow onto the sidewalk. The Arbors' property manager stated that she later hired Changing Seasons to remove this pile of snow from the sidewalk. Accordingly, because there is no genuine issue of material fact, whether the snow pile was open and obvious is a question of law. *Id.*

¶ 66        Given the above testimony, we conclude that the pile of snow was open and obvious as a matter of law. Plaintiff testified that his visibility was not obstructed on the day he fell. He further stated that he was aware of the pile of snow. He also testified that as he was walking on the pile of snow, he knew he was walking on snow and ice. A reasonable person in plaintiff's position, exercising ordinary perception, intelligence, and judgment, would have noticed the large pile of snow and realized the risk of walking upon it. See *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1029, 830 N.E.2d 722, 728 (2005) (concluding that a reasonable person exercising ordinary care would recognize and appreciate the risk in traversing a portion of the

sidewalk that had a piece of concrete sticking upright approximately three to four inches in the air).

¶ 67                     2. *The Deliberate Encounter Exception Does Not Apply*

¶ 68     Plaintiff argues that a genuine issue of material fact existed as to whether the deliberate encounter exception applied. We disagree.

¶ 69     First, no issue of material fact is present. Plaintiff acknowledged that before the accident occurred, he knew there were multiple ways to reach the laundry facility other than to walk through the pile of snow. Even though plaintiff admitted those other paths were an "option" for him to take, he chose to walk on the large pile of snow. Fordham also testified that there were multiple paths to reach the laundry facility from plaintiff's apartment building.

¶ 70     Second, the deliberate encounter exception does not apply as a matter of law to these undisputed facts. The deliberate encounter exception applies when the possessor of land has reason to expect that an invitee or licensee will proceed to encounter a known or obvious danger because a reasonable person in plaintiff's position would do so. *Sollami*, 201 Ill. 2d at 15.

¶ 71     Further, as we earlier noted, the deliberate encounter exception is usually applied in cases involving some kind of economic compulsion. *Id.* at 16. For example, in *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 150-51, 598 N.E.2d 337, 340-41 (1992), the plaintiff, a foreman on a construction site, needed to reach the pipes in a partially constructed building. The plaintiff had two options to reach the pipes: (1) a shorter but ice covered earthen incline or (2) a perimeter path that was longer but presumably safer. *Id.* at 150. The foreman fell on the ice covered earthen incline. See *id.* at 150-51. The trial court found that the landowner owed no duty in part because the condition was open and obvious. *Id.* at 151. The Second District reversed, finding that the deliberate encounter exception applied because it was reasonably foreseeable that workers on the job site would use the incline because it was the shortest path. *Id.*

¶ 72     Likewise, in *Morrissey*, 404 Ill. App. 3d at 713, the plaintiff, a professional horse trainer, had two options to reach the training track: (1) an eastern path that was shorter but was often slippery or (2) a western path that was much longer but was presumably safer. While taking the eastern path, plaintiff was injured when his horse fell. *Id.* During discovery, individuals disagreed on what path was reasonable to take. *Id.* at 719-22. Based upon this record, the First District concluded that a genuine issue of material fact existed as to whether the defendant could have anticipated that plaintiff would deliberately encounter this open and obvious condition. *Id.* at 728.

¶ 73     Conversely, in *Hastings v. Exline*, 326 Ill. App. 3d 172, 173, 760 N.E.2d 993, 994-95 (2001), the plaintiff went to the defendant's mobile home for a social visit. Plaintiff had two ways to exit defendant's mobile home: (1) the front door or (2) the back door. *Id.* The defendant preferred that guests use the mobile home's back door. *Id.* However, the defendant conceded that the back door's steps were dangerous. *Id.* The trial court granted defendant's motion for summary judgment. *Id.* This court affirmed, first concluding that the back door's steps were an open and obvious danger. *Id.* Further, we reasoned that the deliberate encounter exception did not apply because the plaintiff failed to show that "a reasonable person in her position would have found greater utility in choosing to use [defendant's] back door than in using her front door, given the respective conditions of these two exits." *Id.* at 177.

- 10 -

¶ 74     The undisputed facts of this case show that plaintiff was walking on the sidewalk to do his personal laundry at Arbors' laundry facility. Plaintiff was not at his place of employment or facing any other type of economic compulsion. Plaintiff was aware of other reasonable alternative routes to the laundry facility, but instead of choosing to take an alternative route, he proceeded upon a path which had a large pile of snow. He then walked over this snow pile and fell.

¶ 75     Similar to *Hastings*, we conclude plaintiff has failed to demonstrate that a reasonable person in his position would have found greater utility in choosing to walk over the snow pile instead of using one of the alternative paths. *Id.* Plaintiff failed to demonstrate that the alternative paths were covered in snow or were otherwise dangerous. See *id.* ("Theoretically, the case might be different had Hastings provided evidence that the front exit presented an equal (or worse) peril.").

¶ 76     Moreover, unlike *Morrissey*, the alternative paths to the laundry facility were only a minor inconvenience. See *Morrissey*, 404 Ill. App. 3d at 713. Likewise, time was not "of the essence" for plaintiff to do his personal laundry. See *id.* at 728. Further, although plaintiff was using the shortest path, plaintiff was not under any threat of economic compulsion. Compare *Hastings*, 326 Ill. App. 3d at 177 (defendant was entitled to summary judgment when plaintiff injured when walking on stairs with an open and obvious defect during a social visit when the house had another exit that was not alleged to be defective), with *Ralls*, 233 Ill. App. 3d at 151 (deliberate encounter exception applied to plaintiff's fall while walking on an incline because it was reasonably foreseeable that workers on the job site would use the incline because it was the shortest path).

¶ 77                              3. *The Traditional Duty Factors*

¶ 78     Plaintiff argues that even if the condition was open and obvious and no exception applies, he was still owed a duty under a traditional duty analysis. We disagree.

¶ 79     A duty may still exist even if a condition is open and obvious. *City of Centralia*, 2014 IL 116998, ¶ 34. A court determines the existence of duty primarily by considering the four traditional duty factors of (1) the likelihood of injury, (2) the reasonable foreseeability of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.*

¶ 80     On the facts of this case, the first factor weighs against imposing a duty because courts assume that persons encountering an open and obvious condition will appreciate and avoid the risk. *Id.* ¶ 35. To that point, plaintiff stated that he saw the large pile of snow and was aware of multiple ways to reach the laundry facility. Plaintiff could have avoided his injury by taking a readily available alternative path, which would have taken little effort. The second factor also weighs against imposing a duty because a defendant is ordinarily not required to foresee injury from an open and obvious condition. *Id.* The third and fourth factors also weigh against imposing a duty. *Belluomini*, 346 Ill. App. 3d at 692, 696; see *City of Centralia*, 2014 IL 116998, ¶ 36. Therefore, under the four traditional duty factors, defendants did not owe a duty to plaintiff.

¶ 81                                    III. CONCLUSION

¶ 82         For the reasons stated, we affirm the trial court's order.

¶ 83         Affirmed.