2022 IL App (4th) 210633

NO. 4-21-0633

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 24, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BRADLEY A. FOX and MICHELLE FOX, | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Cass County |
| AMEREN ILLINOIS COMPANY, | ) | No. 16L4 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Kevin D. Tippey, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices DeArmond and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1       In July 2015, plaintiff Bradley A. Fox suffered serious injuries while maneuvering his tow truck under overhead powerlines owned by defendant, Ameren Illinois Company (Ameren). The City of Beardstown had hired Fox to remove "sand bunkers" under Ameren's powerlines, and Fox used an extended boom attached to his tow truck to do so. During the operation, Fox's extended boom came into contact with the powerlines, causing Fox's injuries. Ameren later admitted that, on the day Fox was injured, the powerlines did not meet the applicable minimum vertical clearance requirements as promulgated by the Illinois Commerce Commission (ICC). During litigation, an accident reconstructionist opined that, if the powerlines had been in compliance, (1) Fox's truck would not have come into contact with them and (2) Fox would have avoided serious injury.

¶ 2       Fox and his wife, Michelle Fox, sued Ameren pursuant to section 5-201 of the

Public Utilities Act (Act) (220 ILCS 5/5-201 (West 2014)), alleging Ameren was negligent by violating its (1) statutory duty to install and maintain its powerlines above the minimum vertical clearance requirements and (2) common-law duty to maintain powerlines in a safe condition. Ameren moved for summary judgment, arguing that (1) the powerlines were an open and obvious condition that negated Ameren's statutory and common-law duties (2) and no exceptions to the open and obvious doctrine applied. The trial court agreed with Ameren and entered summary judgment in its favor.

¶ 3        Fox appeals, arguing, among other things, that the trial court erred by concluding that the open and obvious doctrine negated (1) Ameren's statutory duty to install and maintain the powerlines at the applicable minimum height required and (2) Ameren's common-law duty to Fox. We agree with Fox, reverse the trial court's decision, and remand for further proceedings. (We note that Fox's wife is also a party to this appeal, having alleged loss of consortium. However, to simplify our discussion, we will refer in this opinion only to Bradley A. Fox, who was driving the truck on the day in question.)

¶ 4                              I. BACKGROUND

¶ 5                              A. The Complaint

¶ 6        In January 2017, Fox filed an amended complaint alleging that Ameren was liable for damages pursuant to section 5-201 of the Act. Specifically, Fox alleged that Ameren violated section 305.20(b) (83 Ill. Adm. Code 305.20(b), amended at 27 Ill. Reg. 5720 (eff. June 15, 2003)) of the ICC's regulations, which required the powerlines to meet the minimum vertical clearance requirements set forth in Rule 232 of the National Electrical Safety Code (NESC), as published by the Institute of Electrical and Electronics Engineers, Inc. See Inst. of Electrical & Electronics Eng'rs, National Electrical Safety Code R. 232 (2002 ed.). Fox asserted that (1) the Act imposed

a statutory duty upon Ameren to maintain the powerlines at 20.75 feet above the ground, (2) Fox was part of the class of people protected by the statute, (3) Ameren had a common-law duty to maintain the powerlines at the height required by the NESC, (4) Ameren breached those duties by maintaining the powerlines at 17.379 feet above the ground when Fox's tow truck hit the powerlines on July 30, 2015, and (5) Fox's tow truck hitting the powerlines caused significant injuries that would not have occurred had Ameren complied with the NESC.

¶ 7                  B. Ameren's Answer and Motion for Summary Judgment

¶ 8          In March 2018, Ameren filed an answer in which it admitted, among other things, that the powerlines "were measured as hanging at a height of 17.379 feet above the ground" shortly after Fox's accident. However, Ameren denied that it (1) owed a duty to Fox, (2) breached a duty to Fox, (3) violated the NESC regarding clearance restrictions, (4) was the direct and proximate cause of the accident, and (5) caused Fox to be distracted. Ameren also asserted comparative negligence, among other things, as an affirmative defense because the powerlines were "open and obvious and should have been seen and avoided by [Fox]."

¶ 9          In April 2021, Ameren filed a motion for summary judgment, arguing that the open and obvious doctrine eliminated the statutory and common-law duties owed to Fox. In particular, Ameren argued that (1) the powerlines were obviously dangerous, (2) Fox knew their location, (3) he chose to operate his truck there anyway, and (4) no exception to the open and obvious doctrine applied. In support of its motion for summary judgment, Ameren attached depositions from (1) Fox, (2) Gary T. Hamilton, Beardstown's director of public works, and (3) Dustin Looker, general foreman of the Beardstown public works department. In support of its motion, Ameren also attached an investigative report prepared by Ameren. Those materials showed the following facts, which (in relevant part) are not in dispute.

¶ 10                    C. Fox's Injury and the Condition of the Powerlines

¶ 11          In July 2015, Fox was hired by Beardstown to drive a tow truck to assist with removing sand bunkers that had been erected at the water treatment plant (hereinafter "the Plant") to protect it from flooding. The sand bunkers were essentially boxes constructed to hold sand that would be stacked in the manner that the following picture depicts.



¶ 12          Fox had previously done this work at the Plant in 2013. Consistent with his 2013 work, Beardstown contracted with Fox to remove the sand bunkers using the retractable boom attached to the back of his tow truck as a crane. When Fox arrived at the Plant, a Beardstown

employee told Fox that in the prior month, June 2015, a dump truck driver hired to bring sand to the sand bunkers had hit the Ameren powerlines near the Plant because the driver had not lowered the truck's bed to accommodate for the height of the powerlines.

¶ 13        The record shows that, following that dump truck accident, Ameren was called to repair the damaged line, which was lying on the ground. An Ameren employee later repaired the line, restoring it to the condition (and the height—namely, about 17½ feet above ground) it was in before the accident.

¶ 14        In order to remove the sand bunkers, Fox had to maneuver his truck with the boom extended under the power lines. The powerlines at issue ran parallel to a road on the side of the Plant. Because Fox's truck was hemmed in by a fence, Fox needed to maneuver his truck forward and backward until he could square the boom with the sand bunkers before lifting them.

¶ 15        While maneuvering the truck, Fox realized that the truck's cab had caught on fire. He attempted to exit the truck to get a fire extinguisher but received an electric shock and was thrown to the ground, sustaining a knee injury, a spine injury, and burn marks on his body. The electric shock was caused by the truck's extended boom coming into contact with the powerlines.

¶ 16        After Fox's accident, Ameren measured the overhead clearance of the powerlines and determined they were at 17.379 feet above the ground. Ameren acknowledged that this height was a violation of the minimum vertical clearance requirements and admitted that the NESC required that the lines have 20.75 feet of vertical clearance.

¶ 17        During litigation, Fox retained an accident reconstructionist to examine the circumstances of the accident and to determine whether Fox's truck would have contacted the powerlines had they been at the required 20.75 feet of vertical clearance. The reconstructionist estimated that, if the powerlines had been 20.75 feet off the ground, "the boom [of Fox's truck]

would have been vertically clear of the [powerlines] by approximately three feet" and Fox would have avoided injury.

¶ 18                     D. The Trial Court's Grant of Summary Judgment

¶ 19          In October 2021, the trial court granted Ameren's motion for summary judgment, finding that the powerlines were open and obvious conditions that nullified any duties Ameren owed Fox. In so ruling, the court found *Hoesly v. Chicago Central & Pacific R.R. Co.*, 153 F.3d 478 (7th Cir. 1998), to be persuasive authority that a cause of action under the Act was subject to the open and obvious doctrine.

¶ 20          We note that the trial court also considered the deliberate encounter and distraction exceptions to the open and obvious doctrine, which Fox also raises on appeal. However, we need not discuss those exceptions in this opinion because we conclude that the open and obvious doctrine does not apply in the first place.

¶ 21          This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23          Fox appeals, arguing, among other things, that the trial court erred by concluding that the open and obvious doctrine negated (1) Ameren's statutory duty to install and maintain the powerlines at the requisite minimum height and (2) Ameren's common-law duty to Fox. We agree with Fox, reverse the trial court's decision, and remand for further proceedings.

¶ 24                          A. The Arguments of the Parties

¶ 25          Fox argues that the open and obvious doctrine does not apply because section 5-201 and Rule 232 of the NESC establish Ameren's duty in this case as a matter of law. Ameren responds that (1) common-law doctrines apply to claims brought pursuant to section 5-201 of the Act and (2) not allowing the open and obvious doctrine would result in strict liability.

¶ 26 Because the trial court decided this case on a motion for summary judgment, we analyze this case in the following manner. First, we discuss what Fox needed to show to establish a *prima facie* case under section 5-201 of the Act. Second, we describe the open and obvious doctrine and examine relevant Illinois statutes and case law to determine whether that doctrine applies to section 5-201 actions. Last, assuming the open and obvious doctrine applies in this case, we analyze whether Ameren owed Fox a common-law duty using the traditional duty analysis.

¶ 27 B. Summary Judgment and the Standard of Review

¶ 28 Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "Summary judgment is a drastic means of disposing of litigation and 'should be allowed only when the right of the moving party is clear and free from doubt.' " *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488 (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004)). "To survive a motion for summary judgment, the nonmoving party need not prove his case at this preliminary stage of litigation; however, the plaintiff must present some evidentiary facts to support each element of his cause of action, which would arguably entitle him to a judgment." *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 16, 100 N.E.3d 544. Whether a duty exists is a question of law, which appellate courts review *de novo*. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶¶ 21-22, 980 N.E.2d 58.

¶ 29 C. Violation of Rule 232 as *Prima Facie* Evidence of Negligence

¶ 30 1. *The Applicable Law*

¶ 31 The legislature enacted section 5-201 of the Act, which created a private right of

action against utility companies for injuries sustained from the company's violation of the Act. 220 ILCS 5/5-201 (West 2020) ("In case any public utility shall *** omit to do any act, matter or thing required to be done either by any *** any rule, regulation, order or decision of the [ICC], *** the public utility shall be liable ***."); *Barthel v. Illinois Cent. Gulf R.R. Co.*, 74 Ill. 2d 213, 218, 384 N.E.2d 323, 326 (1978) ("[S]ection [5-201] of the Public Utilities Act will support an action for personal injuries resulting from a violation of ICC rules.").

¶ 32        The Act created the ICC and granted the ICC the power to oversee, among other things, the operation of electric companies to ensure they were operated safely. 220 ILCS 5/4-101 (West 2014). The purpose of the ICC's adoption of the NESC's rules "is the practical safeguarding of persons during the installation, operation, or maintenance of electric supply and communication lines and their associated equipment. [Part 305] contains minimum requirements considered necessary for the safety of employees and the public." 83 Ill. Adm. Code 305.10, amended at 8 Ill. Reg. 19943 (eff. Oct. 1, 1984). Pursuant to the Act, the ICC promulgated section 305.20 of Title 83 (83 Ill. Adm. Code 305.20(b)(3), amended at 27 Ill. Reg. 5720 (eff. June 15, 2003)), which designated certain portions of the NESC rules as the standard of care with which power companies must maintain their powerlines.

¶ 33        Relevant to this case, the ICC adopted Rule 232, which is titled "Safety Rules for Installation and Maintenance of Overhead Electric Supply and Communication Lines." *Id.* Rule 232 required the powerlines at issue in this case to have 20.75 feet of vertical clearance.

¶ 34        Although a "violation of a safety statute, ordinance, or regulation having the force of law is *prima facie* evidence of negligence, it is not negligence *per se*." *Icenogle v. Myers*, 167 Ill. App. 3d 239, 245, 521 N.E.2d 163 (1988). "Accordingly, once a violation of [a] statute is shown, there is no question of duty and the focus turns *** to whether (1) the plaintiff is a member

of the class of persons protected by the statute, (2) the plaintiff's injury is the type the statute intended to protect against, and (3) the defendant's violation of the statute proximately caused the injury." *Price v. Hickory Point Bank & Trust*, 362 Ill. App. 3d 1211, 1216-17, 841 N.E.2d 1084 (2006).

¶ 35                                           2. *This Case*

¶ 36          Here, Fox alleges Ameren violated Rule 232. The parties do not dispute that the Act creates a private cause of action for violations of the Act or that Rule 232 of the NESC provides the appropriate standard of care for maintaining powerlines. Additionally, (1) Fox clearly belongs to the class of people that Rule 232 was designed to protect—namely, "employees and the public" (83 Ill. Adm. Code 305.10, amended at 8 Ill. Reg. 19943 (eff. Oct. 1, 1984)); (2) his injury was of the type that the rule was designed to protect—namely, being shocked by electricity from overhead electric powerlines; and (3) Fox's expert asserted that Ameren proximately caused Fox's injuries by not maintaining its powerlines at the statutorily required height. Examining the record in the light most favorable to Fox, we conclude that he has properly pleaded the necessary elements to sustain a claim of negligence against Ameren. See *Price*, 362 Ill. App. 3d at 1216-17.

¶ 37          Having so determined, the next issue we address is whether, in a claim under the Act, the open and obvious doctrine may be applied to negate Ameren's owing a duty to Fox. We conclude that it does not.

¶ 38          D. The Application of the Open and Obvious Doctrine to Rule 232

¶ 39                                   1. *The Applicable Law*

¶ 40          The open and obvious doctrine is a common-law exception to the general duty of care owed by a landholder for conditions on the land. *Hutson v. Pate*, 2022 IL App (4th) 210696, ¶¶ 42, 49-50. "A condition on the property is 'open and obvious' when a reasonable person in the

plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk." *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 63, 115 N.E.3d 282.

¶ 41 "To state a [common-law] cause of action for negligence, a plaintiff must allege that (1) the defendant owed plaintiff a duty, (2) the defendant breached this duty, and (3) that this breach was the proximate cause of plaintiff's resulting injuries." *Pate*, 2022 IL App (4th) 210696, ¶ 39. "To determine whether a defendant owed a legally recognized duty to a plaintiff, courts examine four traditional duty factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 66. "The appropriate weight given to these four factors depends upon the unique circumstances of an individual case." *Winters*, 2018 IL App (4th) 170669, ¶ 57.

¶ 42 Unlike the common-law defense of contributory negligence, the open and obvious doctrine is not a defense to negligence but an analytical doctrine for determining the existence of a duty. *Bier v. Leanna Lakeside Property Association*, 305 Ill. App. 3d 45, 61, 711 N.E.2d 773, 398 (1999) ("[T]he 'open and obvious' doctrine is not a common-law 'defense' but rather a consideration in the duty analysis."); *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447, 656 N.E.2d 826, 832-33 (1996).

¶ 43 When applied to the traditional duty analysis, the doctrine operates on the first two duty factors to weigh against the imposition of a duty. *Winters*, 2018 IL App (4th) 170669, ¶ 55. This court in *Winters* described the doctrine's operations as follows.

"When a condition is open and obvious, the first duty factor weighs against imposing a duty because courts assume that persons encountering potentially

dangerous conditions will appreciate and avoid the risk, making the likelihood of injury slight. [Citation.] Likewise, when a condition is open and obvious, the second factor weighs against imposing a duty because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." (Internal quotation marks omitted.) *Id.*

¶ 44 Accordingly, if (as in the present case) a statute affirmatively provides that a duty exists, then no analysis involving the open and obvious doctrine is necessary or appropriate.

¶ 45 2. *This Case*

¶ 46 Ameren argues that the open and obvious doctrine must apply here despite its duty being statutory because of the Illinois Supreme Court's decisions in *Barthel*, 74 Ill. 2d 213 (holding that the Act did not provide for strict liability), and *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 241, 641 N.E.2d 440, 444 (1994) (*Bell*) (holding that plaintiffs cannot recover economic damages under the Act), and the Seventh Circuit's decision in *Hoesly*, 153 F.3d 478 (holding that the open and obvious doctrine applied to sections of the Act). Specifically, Ameren argues that, if this court were to conclude that the open and obvious doctrine does not apply here, that conclusion would (1) contradict the holding in *Hoesly* and (2) amount to the imposition of strict liability. Ameren contends that the supreme court in *Barthel* rejected the imposition of strict liability under the Act.

¶ 47 We disagree with Ameren's argument because (1) an application of the open and obvious doctrine here is inapposite to the spirit of the Act and a plain reading of Rule 232, (2) the cases Ameren cites are distinguishable, and (3) a conclusion that the open and obvious doctrine does not apply to this section of the Act does not create strict liability.

¶ 48 a. The Purpose and Plain Language of Rule 232

¶ 49    To hold that the open and obvious doctrine applies in the present case would undermine the purpose of section 5-201 of the Act and render the language of Rule 232 meaningless. Unambiguous statutes should be enforced as written, and statutes must be construed to avoid absurd results. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. "In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought." *Id.* "[S]tatutes must be construed to avoid absurd results." *Id.*

¶ 50    Illinois has long recognized that the "[d]istribution of electrical energy is an inherently dangerous enterprise and power companies are required to exercise a high degree of care to see that their wires are properly placed and insulated." *Spence v. Commonwealth Edison Co.*, 34 Ill. App. 3d 1059, 1067, 340 N.E.2d 550, 556 (1975); see also *Mullen v. Chicago Transit Authority*, 33 Ill. App. 2d 103, 113, 178 N.E.2d 670, 674 (1961) (comparing the operation of a power company to the "operation of a firing range or handling of explosives"). Accordingly, as we discussed earlier, the legislature enacted section 5-201 of the Act (220 ILCS 5/5-201 (West 2014)), and the ICC promulgated section 305.20(b)(3) (83 Ill. Adm. Code 305.20(b)(3), amended at 27 Ill. Reg. 5720 (eff. June 15, 2003)).

¶ 51    A plain reading of section 5-201 of the Act together with section 305.20 of Title 83 of the Administrative Code provide that a public utility, like Ameren, can be sued for injuries resulting from its violation of the NESC rules, which are intended for the "safeguarding of persons during the installation, operation, or maintenance of electric supply and communication lines and their associated equipment." 83 Ill. Adm. Code 305.10, amended at 8 Ill. Reg. 19943 (eff. Oct. 1, 1984). Permitting the open and obvious doctrine's application to this case, thereby negating Ameren's duty, would be inconsistent with the purposes of sections 5-201 and 305.20.

¶ 52            One would be hard pressed to imagine a situation where powerlines would not be open and obvious, which means that, if the open and obvious doctrine applied, injured parties would be incapable of recovering damages for their injuries under section 5-201. Because (1) powerlines by their very nature are open and obvious hazards, (2) the stated goal of the ICC is to protect the public, and (3) the regulatory scheme is so specific, the Act and the ICC's regulations at issue here were clearly meant to create a nonrebuttable duty.

¶ 53            For instance, if Ameren placed its powerlines four feet above the ground, surely every pedestrian would see them before walking into them. Yet, in this hypothetical, it would be absurd to absolve Ameren of any duty to place the powerlines at the appropriate height because they were open and obvious to any pedestrian. See *Dawkins*, 2022 IL 127561, ¶ 27 ("[S]tatutes must be construed to avoid absurd results.").

¶ 54                              b. *Hoesly*

¶ 55            In *Hoesly*, 153 F.3d at 479, the defendant was repairing railroad tracks that intersected a pedestrian crosswalk. As part of the construction work, gravel and dirt were left on the crosswalk walking surface. *Id.* Approximately one week later, the plaintiff tripped on the pile of gravel, fell, and was injured. *Id.* The plaintiff alleged that the defendant was negligent by failing to comply with section 5-201 of the Act (220 ILCS 5/5-201 (West 1992)) and two regulations (92 Ill. Adm. Code 1535.203, amended at 11 Ill. Reg. 19027 (eff. Nov. 15, 1987); *id*. § 1535.206) adopted by the ICC. *Hoesly*, 153 F.3d at 480. The railroad asserted that, because the open and obvious doctrine applied, it owed no duty to the plaintiff. *Id.* The Seventh Circuit agreed, concluding that the Illinois Supreme Court would determine that the open and obvious doctrine could apply to duties owed under the Act. *Id.* at 481.

¶ 56            *Hoesly* is distinguishable from the present case because sections 1535.203 and

1535.206 of Title 92 of the Illinois Administrative Code (the sections of regulations at issue in *Hoesly*) were nothing more than a codification of the common-law duty of reasonable care. See *Bier*, 305 Ill. App. 3d at 60 ("We note, however, that the statute in *Hoesly* had simply adopted the common-law duty standard of reasonable care.").

¶ 57          Section 1535.203 of Title 92 states, in pertinent part, "[e]very grade crossing shall be constructed and maintained in such manner that it will not interfere with the *reasonably safe use of* the roadway when traveled in the usual and ordinary manner." (Emphasis added.) 92 Ill. Adm. Code 1535.203, amended at 11 Ill. Reg. 19027 (eff. Nov. 15, 1987). Section 1535.206 of Title 92 states in pertinent part "it shall be the duty of the rail carrier to construct and maintain the crossing *** so that at all times they will be *reasonably safe* as to persons or property." (Emphasis added.) *Id*. § 1535.206. Both of these sections provide that the rail carrier needs to maintain its property in a reasonably safe manner—in other words, they state the common-law negligence standard of reasonable care. See *State Farm Fire & Casualty Co. v. Welbourne*, 2017 IL App (3d) 160231, ¶ 16, 85 N.E.3d 561 ("Under negligence law, the standard of care required of a defendant in an ordinary negligence case is to act as an ordinarily careful person or reasonably prudent person would act under similar circumstances.").

¶ 58          On the other hand, section 305.20 of Title 83, at issue in this case, adopts the NESC's Rule 232, which provides an array of tables for utility companies to use to determine the proper height at which a specific powerline needs to be maintained dependent upon atmospheric conditions, location, length of powerlines, and other physical qualities of the lines (20.75 feet in the present case). We note this rule is very similar to the rules that the supreme court in *Barthel* stated were substitutes for the common-law standard of reasonableness. See *Barthel*, 74 Ill. 2d at 223 ("Rules 342 and 344 *** provide that flashing light signals shall operate for not less than 20

seconds before a train approaches a crossing and continue to operate until the rear end of the train clears the crossing."). Because Rule 232 is a specific regulatory scheme similar to the rules in *Barthel*, it is a substitute for the common-law reasonableness standard of care. Accordingly, the sections at issue in *Hoesly* are different in kind than Rule 232.

¶ 59        In order to determine whether a defendant owes a duty to a plaintiff at common law, courts apply the traditional duty analysis, which, as we have stated earlier, can include consideration of the open and obvious doctrine. *Winters*, 2018 IL App (4th) 170669, ¶ 55. However, because in the present case, unlike in *Hoesly*, the Act imposed a specific separate duty and standard of care in derogation of the common law—namely, powerlines must have a vertical clearance of 20.75 feet—instead of mere common-law reasonableness, the traditional duty analysis does not apply. Accordingly, the open and obvious doctrine does not apply to any determination of whether Ameren in this case owed a duty to Fox because the statute answers that question affirmatively. See *Bier*, 305 Ill. App. 3d at 60 ("*Hoesly* did not address the issue of the violation of a regulatory scheme, such as the one involved in the present case, that placed specific duties upon the defendant to do or not to do specific acts.").

¶ 60                                        c. *Bell*

¶ 61        Ameren argues that the *Bell* court concluded that the Act does not allow for recovery of economic damages because a strict construction of the Act would allow recovery only for those damages allowed at common law. *Bell*, 161 Ill. 2d at 240 (citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982) (economic damages were not normally available at common law)). The inference Ameren suggests we draw, and the same inference that the Seventh Circuit drew in *Hoesly*, is that by not applying the open and obvious doctrine to this case (which according to Ameren would prevent Fox's recovery), this court would

allow recovery greater than that allowed at common law.

¶ 62　　　　　　However, unlike the recovery of economic damages at issue in *Bell*, which would have allowed greater recovery than that permitted at common law, a condition's being open and obvious does not preclude recovery in negligence actions. See *Winters*, 2018 IL App (4th) 170669, ¶ 79 ("A duty may still exist even if a condition is open and obvious."). As we stated earlier, the open and obvious doctrine is not the end of the duty analysis but only a doctrine to aid in the negligence analysis. See *id.* ¶ 55. Accordingly, because the open and obvious doctrine is not a defense to negligence and does not preclude recovery in a negligence action, *Bell* is distinguishable, and its holding that the Act does not expand available remedies does not apply here.

¶ 63　　　　　　　　　　　　d. *Barthel* and Strict Liability

¶ 64　　　　　　In *Barthel*, the supreme court recognized that the specific language of the regulatory rules adopted by the ICC in that case went "beyond restating the common law and impose[d] a specific duty on the railroad." *Barthel*, 74 Ill. 2d at 223. The court then concluded that a violation of the provision at issue amounted to "negligence as a matter of law." *Id.* The court further observed that because the rules were in derogation of the common law, requiring the Act to be narrowly construed, the court would not impose strict liability absent the plain intent of the legislature to do so. *Id.* at 223-24. Accordingly, the court concluded that the defense of contributory negligence was not abrogated by the legislature. *Id.* at 224-25.

¶ 65　　　　　　*Barthel*'s holding implies that, although a violation of the Act is *prima facie* evidence of negligence, all that is necessary to dispel strict liability is that (1) the defense of contributory negligence (now termed comparative negligence) be available and (2) a jury may ultimately decide whether defendant breached his duty. See also *Bier*, 305 Ill. App. 3d at 59 ("[I]f

the violation of a statute constitutes *prima facie* evidence of negligence, the case goes to the jury and cannot be dismissed on the basis of the lack of a common-law duty.").

¶ 66 Applying *Barthel* to the present case, (1) comparative negligence is an available defense, and (2) Ameren's violation of the statute is only *prima facie* evidence of negligence. Accordingly, a decision in Fox's favor in this appeal from the trial court's grant of summary judgment will not impose strict liability on Ameren because Ameren will have the opportunity to argue both proximate cause and whether it breached its statutory duty to a jury. See *id.* ("[D]efendant can nonetheless prevail under the *prima facie* evidence approach if he can show that he acted reasonably under the circumstances or that a violation of the statute was not the proximate cause of the plaintiff's injury."); see also *Kalata v. Anheuser-Busch Companies, Inc.*, 144 Ill. 2d 425, 435, 581 N.E.2d 656, 661 (1991) ("The [statutory] violation does not constitute negligence *per se*, however, and therefore the defendant may prevail by showing that he acted reasonably under the circumstances.").

¶ 67 One example of a situation in which a defendant violated a statute but nonetheless may have acted reasonably was in *Singer v. Schmudde*, 174 Ill. App. 3d 253, 257-58, 528 N.E.2d 234, 237 (1988). In that case, the defendant violated a traffic law, which provided that vehicles were required to display parking lights when stopped on a highway, and plaintiff moved for a directed verdict. *Id.* at 255, 257-58. The trial court denied the motion, and the appellate court affirmed, concluding that the defendant could have proved he acted reasonably given the circumstances because (1) the defendant's car stalled due to an electrical shortage, which caused the car's lights to be extinguished, and (2) the defendant took steps to make the situation safer by pointing another car's headlights at the stalled car, walking down the road to warn oncoming traffic of the danger, and waving cars around. *Id.* at 255-58; see also *Bybee v. O'Hagen*, 243 Ill. App. 3d

- 17 -

49, 54, 612 N.E.2d 99, 103 (1993) (" 'In the ordinary case, all that is required is reasonable diligence to obey the statute, and it frequently has been recognized that a violation of the law may be reasonable, and may be excused.' ") (quoting Prosser & Keeton on the Law of Torts § 36, at 228 (W. Page Keeton *et al.* eds., 5th ed. 1984)).

¶ 68 The same holds true in the present case, meaning that Ameren retains the right to argue that, despite its violation of the Act, it acted reasonably. Accordingly, because a violation of a statute is merely *prima facie* evidence of negligence, the open and obvious doctrine's application is not necessary to avoid strict liability. Instead, "the openness or obviousness of a danger will continue to have a bearing on the plaintiff's ultimate recovery, as it relates to breach and proximate cause." *Grant v. S. Roxana Dad's Club*, 381 Ill. App. 3d 665, 674, 886 N.E.2d 543, 551 (2008).

¶ 69 Accordingly, we conclude that (1) the open and obvious doctrine does not apply to diminish the duty created by section 5-201 and (2) Ameren's violation of the NESC is *prima facie* evidence of negligence. See *Bier*, 305 Ill. App. 3d at 58 ("The violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence.").

¶ 70 We again emphasize that Ameren can still prevail in the trial court if it can show that it "acted reasonably under the circumstances or that a violation of the statute was not the proximate cause of [Fox's] injury." *Id.* at 59. However, these questions are for the fact finder to determine.

¶ 71 3. *The Traditional Duty Analysis*

¶ 72 Even if we apply the open and obvious doctrine using the traditional duty analysis, Ameren still owes a common-law duty to Fox. As we noted earlier, "To state a cause of action for negligence, a plaintiff must allege that (1) the defendant owed plaintiff a duty, (2) the defendant breached this duty, and (3) that this breach was the proximate cause of plaintiff's resulting

injuries." *Pate*, 2022 IL App (4th) 210696, ¶ 39.

> "To determine whether a defendant owed a legally recognized duty to a plaintiff, courts examine four traditional duty factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 66.

"The appropriate weight given to these four factors depends upon the unique circumstances of an individual case." *Winters*, 2018 IL App (4th) 170669, ¶ 57.

¶ 73 The open and obvious doctrine operates on the first two factors to weigh against the imposition of a duty. *Id.* ¶ 55. However, regarding the foreseeability factor, Ameren concedes that, earlier the same month that Fox was injured, a dump truck ran into the same powerlines, pulling them down. That recent event weighs in favor of Fox's injury being foreseeable despite the open and obvious condition of the powerlines. In light of that earlier incident, a truck running into the powerlines and electrifying the vehicle is exactly the kind of injury that one would foresee occurring with powerlines.

¶ 74 This conclusion is further bolstered by the ICC's scheme for determining the vertical clearance needed for powerlines, which bases the height requirement on the activities below the lines—for example, permitting the lowering of the lines when located over pedestrian-only spaces and requiring raising the lines for vehicle traffic. The implication of that scheme is that the ICC determined that injury was foreseeable depending on the activities beneath the powerlines—namely, they can be lower for people and higher for vehicles. As for the likelihood of injury, considering the open and obvious nature of the powerlines and their being high in the air, a person's or vehicle's coming into contact with the lines would be unlikely under normal

circumstances.

¶ 75 Regarding the third and fourth duty factors—namely, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant—both of those factors weigh very strongly in favor of imposing a duty here. These factors reflect the fairness of imposing a duty on Ameren to maintain its lines at a certain height.

¶ 76 Because the ICC has affixed a set of specific guidelines—namely, the NESC's Rule 232—the ICC has placed its thumb on the scale in favor of imposing a duty on Ameren by having already considered the burden and consequences of imposing that duty. See *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 390, 356 N.E.2d 93, 97 (1976) ("Administrative regulations are the result of an agency's applied expertise and are relevant evidence of applicable standards of care."). Indeed, the introduction to the NESC states that its standards were based on "an appropriate balance of the interests of members of the public, utility workers, regulatory agencies and the various types of private and public utilities." See Inst. of Electrical & Electronics Eng'rs, *supra*, § 1. By creating a specific regulatory scheme, the ICC made clear that public policy favors Ameren's properly maintaining its powerlines in a reasonably safe manner, as determined by the ICC, for the safety of the public.

¶ 77 The Act requires Ameren's compliance with its provisions, and one of those provisions required Ameren to maintain its lines at a certain height in accordance with the NESC. Accordingly, based on a traditional duty analysis, Ameren had a common-law duty to maintain the powerlines in a reasonably safe condition, and Rule 232 sets forth what is reasonable with regard to height.

¶ 78                                 III. CONCLUSION

¶ 79 We conclude that (1) the open and obvious doctrine does not apply to the duty

created by the Act and Rule 232 and (2) even if we applied the open and obvious doctrine in this case, Ameren would still owe a common-law duty to Fox under a traditional duty analysis.

¶ 80   For the reasons stated, we reverse the trial court's grant of summary judgment and remand for further proceedings.

¶ 81   Reversed and remanded.

*Fox v. Ameren Illinois Co.*, 2022 IL App (4th) 210633

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cass County, No. 16-L-4; the Hon. Kevin D. Tippey, Judge, presiding. |
| **Attorneys for Appellant:** | Richard L. Pullano, Mathew T. Siporin, and Michael J. Pullano, of Pullano Law Offices, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Thomas H. Wilson, of HeplerBroom, LLC, of Springfield, and Robert E. Elworth and Julieta A. Kosiba, of HeplerBroom, LLC, of Chicago, for appellee. |
| ***Amicus Curiae*:** | Dominic C. LoVerde and James I. Power, of Power Rogers, LLP, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |