YONETTA MONTGOMERY, Plaintiff-Appellant, v. MANUEL P. BLAS, Defendant-Appellee.

First District (3rd Division)   No. 1—04—2632

Opinion filed July 20, 2005.

Matthew C. Friedman, of Friedman & Bonebrake, P.C., of Chicago, for appellant.

Charles F. Redden, of Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Kathryn A. Smetana, of counsel), for appellee.

JUSTICE SOUTH delivered the opinion of the court:

Following a jury trial, plaintiff, Yonetta Montgomery, appeals from a judgment in favor of defendant, Manuel P. Blas, M.D. She filed this action to recover damages allegedly resulting from excessive amounts of steroids administered by defendant for the treatment of plaintiff's back pain and causing a condition known as avascular necrosis (AVN).

Defendant is a pain management specialist. Plaintiff was treated by defendant for lower-back pain between 1993-96. Defendant's treatment included trigger point injections, epidural steroid injections, physical therapy, and prescription pain medication. On August 25, 1996, plaintiff was diagnosed with AVN in both hips, and she underwent a right hip replacement surgery in 1996 and a revision in 2002. Plaintiff filed this medical negligence action against defendant in 2001, alleging that the epidural steroid injections which he administered in 1993 and 1994 caused the AVN. Specifically, she alleged that she received 29 doses, which were too high and too numerous.

Plaintiff disclosed several expert witnesses in her answer to defendant's Rule 213 (177 Ill. 2d R. 213) interrogatories: Dr. Timothy Lubenow, the head of pain management at Rush-Presbyterian-St. Luke's Medical Center; Dr. Alfred Akkerow, Dr. Wayne Paporsky, and Dr. Jeffrey Meisles, all treating orthopedic surgeons; and Dr. Ronald Sacher, a hematologist from the University of Cincinatti Medical Center. However, only Dr. Lubenow and Dr. Sacher testified at trial.

Dr. Lubenow testified that the standard of care required that plaintiff should have only received a series of injections with a total dosage of 360 milligrams over several weeks to three months, and that

the injections administered by defendant caused plaintiff's AVN. Dr. Sacher testified that plaintiff's AVN was caused by the steroids administered by defendant and that the AVN was not caused by a preexisting blood disorder or any other condition.

Defendant testified on his own behalf that the epidural steroids which he administered to plaintiff did not cause her AVN because the dosage and frequency were too minimal. He further testified that he complied with the standard of care and believed plaintiff's AVN was caused by trauma.

Defendant disclosed three expert witnesses in his answer to plaintiff's Rule 213 interrogatories: Dr. Baroukh Levi, an anesthesiologist and pain management specialist, who would testify with respect to the standard of care; Dr. Thomas Zizic, a rheumatologist, who authored the only grant-funded research study of the causes of AVN and would testify with respect to causation; and Dr. Richard Berger, an orthopedic surgeon, who would address the nature and course of AVN as he had seen it in literature and his clinical experience.

At trial, Dr. Levi opined that he had never heard of epidural steroid injections causing AVN and that there was no limit as to the number of injections or dosages a doctor could administer to a patient. He did not, however, have an opinion as to the cause of plaintiff's AVN. Dr. Zizic opined that there are systemic side effects to epidural steroid injections, including AVN, but not in the amounts that were given to the plaintiff. He further opined that plaintiff's AVN was caused by either a preexisting blood disorder, smoking, a protein C deficiency, or a liver dysfunction. Dr. Berger was not called by defendant. Prior to the close of evidence, defendant's counsel advised the court that Dr. Berger would not be called to testify because he, counsel, believed that a fourth witness was not needed to establish that plaintiff's AVN was not caused by epidural steroid injections and that the doctor's testimony would needlessly delay the jury's deliberations.

At the instructions conference, plaintiff tendered a missing-witness instruction, Illinois Pattern Jury Instructions, Civil, No. 5.01 (Supp. 2000) (hereinafter IPI Civil (Supp. 2000) No. 5.01) to the court, arguing that Dr. Berger's testimony would have been adverse to the defense or he would have been called. Defendant responded that Dr. Berger's testimony was cumulative and unnecessary. Plaintiff's counsel acknowledged that while Dr. Berger's testimony was consistent with the ultimate opinion of the other defense experts, his deposition testimony differed from Dr. Zizic's as to the causes of AVN because he testified that AVN was not caused by smoking, a blood disorder, or trauma. Dr. Berger also testified that there were no systemic side ef-

fects of epidural steroids and that plaintiff's AVN was idiopathic.[1] The trial court refused to give the instruction, finding that the elements for the instruction were not present. However, plaintiff was allowed to mention Dr. Berger during closing arguments. Plaintiff's counsel argued during closing arguments that the testimonies of defendant's experts were inconsistent as to the cause of plaintiff's AVN. The jury subsequently returned a verdict in favor of defendant.

Plaintiff then filed a motion for new trial based on the court's failure to tender the missing-witness instruction. In denying the post-trial motion, the trial court noted that parties are not required to produce every retained expert and that the missing-witness instruction was not warranted since the testimony was cumulative.

On appeal, plaintiff contends that the trial court abused its discretion by not giving the missing-witness instruction. She cites the four requirements for giving the instruction, arguing that (1) Dr. Berger was under the exclusive control of the defendant because he was a retained expert and was not abandoned in a timely manner; (2) Dr. Berger was not equally available to the plaintiff because he was likely to be biased against the plaintiff and was retained by defendant; (3) defendant would have presented Dr. Berger if he had thought he was a favorable witness; and (4) there was no reasonable excuse for the failure of defendant to call Dr. Berger to testify at trial. Plaintiff also contends that she was greatly prejudiced by the failure of defendant to timely abandon Dr. Berger or to have him testify at trial.

■ The missing-witness instruction, IPI Civil (Supp. 2000) No. 5.01, is given if the trial court makes a preliminary determination that a party, in all likelihood, would have produced a witness or evidence unless that witness or evidence was unfavorable to it. *Myre v. Kroger Co.*, 176 Ill. App. 3d 160, 164-65 (1988). The instruction is available when: (1) the witness was under the control of the party against whom the instruction is offered and could have been produced by reasonable diligence; (2) the witness was not equally available to the adverse party; (3) a reasonably prudent person would have produced the witness if she had believed the testimony would be favorable to her; and (4) no reasonable excuse for the failure to produce the witness has been shown. *Adami v. Belmonte*, 302 Ill. App. 3d 17, 25 (1998). "However, the instruction is not warranted if the evidence that has not been offered or the witness that has not been produced is merely cumulative of facts already established." *Kersey v. Rush Trucking,*

---

[1]Webster's dictionary defines "idiopathic" as arising spontaneously or from an obscure cause. Webster's Third New International Dictionary 1123 (1981).

*Inc.*, 344 Ill. App. 3d 690, 696 (2003). The decision whether to tender the instruction to the jury is within the sound discretion of the trial court, and that decision will not be reversed absent a clear abuse of discretion. *Kersey*, 344 Ill. App. 3d at 696.

Defendants do not dispute the presence of the first two foundational requirements for a missing-witness instruction. Plaintiff satisfies the first two requirements because Dr. Berger, as an expert witness hired by defendant, was under defendant's control for purposes of testifying and was, therefore, unavailable to plaintiff. See *Kersey*, 344 Ill. App. 3d at 697. With respect to the third factor, plaintiff argues that Dr. Berger's testimony would have been unfavorable to defendant because it was contrary to that of defendant's other witnesses. Plaintiff contends that Dr. Berger's deposition testimony regarding the causes of AVN generally and his belief that the cause of plaintiff's AVN was idiopathic or unknown was contrary to defendant's testimony that it was caused by trauma and Dr. Zizic's testimony that it was caused by a blood disorder. Plaintiff also contends that there was a dispute between Dr. Zizic's testimony that there are systemic side effects to epidural steroid injections including AVN and Dr. Berger's deposition testimony that there are no side effects. While plaintiff agrees that Dr. Berger's ultimate conclusion is that the epidural steroid injections administered by defendant did not cause her AVN, she argues that these differences contradict and discredit defendant's theory of the causation of plaintiff's AVN.

In response, defendant argues that he was not required to prove the cause of plaintiff's AVN, only that the epidural steroids he administered were not the cause. To that end, defendant argues that all of his expert witnesses, including Dr. Berger, testified that the epidural steroids were not the cause of plaintiff's AVN.

Defendant's answer to the Rule 213 interrogatories indicated that Dr. Berger would be called to explain the nature and course of AVN, and that he would testify based upon his experience regarding the possible causes considering the mechanism which leads to AVN. In his deposition, Dr. Berger testified that he was an orthopedic surgeon and a partner at Midwest Orthopaedics. He reviewed plaintiff's records and the deposition testimony of Dr. Lubenow, with whom he works. With respect to the cause of plaintiff's AVN, Dr. Berger opined that it had an unknown cause. As for smoking, Dr. Berger testified that while smoking by itself is not a known cause of AVN, it can be a secondary factor. Dr. Berger further testified that trauma is also one of the causes of AVN, usually a serious traumatic event such as a hip dislocation, but not a minor, repetitive trauma. Furthermore, Dr. Berger testified that he did not believe that plaintiff's AVN was caused by a blood clot-

ting disorder or that there were systemic side effects from the use of epidural steroid injections. According to Dr. Berger, there is an association with the use of both oral and intravenous steroids with AVN, but plaintiff never took oral or intravenous steroids, and there has never been an association between epidural steroid injections and AVN. Additionally, Dr. Berger opined that plaintiff's dosage was too low to have been a cause of AVN.

■ After a careful review of Dr. Berger's deposition testimony and the trial testimony of defendant's other expert witnesses, we find that Dr. Berger's proffered testimony would have been cumulative to the other witnesses' conclusion that the epidural steroid injections administered by defendant did not cause plaintiff's AVN, which was the ultimate issue. Moreover, Dr. Berger's deposition testimony would not have been contradictory to the testimony of defendant's other witnesses. Further, we find that calling Dr. Berger to testify would have unnecessarily prolonged the trial and conclude that the trial court did not abuse its discretion by not giving the missing-witness instruction. See *Adami*, 302 Ill. App. 3d at 25.

Based upon our ruling, we need not address plaintiff's contention that she was greatly prejudiced by defendant's failure to call Dr. Berger.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

KARNEZIS, P.J., and HOFFMAN, J., concur.