2026 IL App (1st) 242439-U
No. 1-24-2439
Order filed March 13, 2026

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JEFFREY BRUNGART, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 7653 |
| ZAKARIA AWWAD, individually, LMZ | ) | |
| TRANSPORTATION INC., an Illinois | ) | |
| Corporation, I & L TRANSPORTATION INC., | ) | The Honorable |
| an Illinois Corporation, | ) | Gerald Cleary, |
| | ) | Judge, presiding. |
| Defendants-Appellees, | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirming order denying defendant's motion for a judgment notwithstanding the verdict or a new trial where the evidence supported the jury's verdict in plaintiff's favor, defendants were not denied a fair trial, and damages were not excessive.

¶ 2    Zakaria Awwad drove his semi-tractor-trailer through a red light and collided with Jeffrey Brungart's pickup truck. After two shoulder surgeries and an 18-month recovery, Brungart sued Awwad, his company, and his employer, alleging negligence. The jury returned a verdict

for Brungart and a judgment of more than $2.2 million. The jury allocated 95% of the fault to defendants. Defendants filed a post-trial motion seeking judgment notwithstanding the verdict (JNOV), a new trial on liability or damages only, or remittitur. The trial court denied the motion.

¶ 3        Defendants argue that Brungart was the sole proximate cause of the injury because he turned left in front of Awwad without yielding to oncoming traffic, which they believe entitles them to a JNOV or a new trial. Defendants also contend the trial court made prejudicial evidentiary rulings by: (i) admitting evidence of a blood alcohol test without showing Awwad was impaired, (ii) admitting evidence and giving a missing evidence instruction about an alleged missing dashcam video and electronic logging device from Awwad's truck, and (iii) allowing a layperson to offer opinion testimony about what Awwad should have done to avoid the accident. Alternatively, defendants request a new trial on damages or a remittitur, asserting that (i) the trial court erred in permitting recovery for loss of normal life and future pain and suffering without expert testimony, and (ii) the damages award was excessive.

¶ 4        We affirm. The trial court did not err in denying the motion for a JNOV or a new trial, as the evidence supported the jury's finding that Awwad's negligence was the proximate cause of the accident. Further, (i) defendants were not prejudiced by the evidentiary rulings; (ii) the jury instructions on damages for loss of normal life and future pain and suffering were proper; and (iii) the damages were not excessive.

¶ 5                                          Background

¶ 6        On November 15, 2019, Zakaria Awwad was driving a semi-trailer north on Route 53, transporting about 35 tons for his employer, I & L Transportation Inc. Jeffrey Brungart was driving a pickup truck south on Route 53. Brungart stopped at a green light at an intersection

and waited for traffic to clear before turning left. When the light changed from yellow to red, Brungart did not turn, waiting for an SUV that drove through the red light. Awwad, behind the SUV, saw the light was red but decided to continue through the intersection because stopping might cause the truck to jackknife. Brungart did not see Awwad's truck and turned left. Awwad struck Brungart's pickup on the front right side, spinning it around.

¶ 7        Brungart sustained a labrum tear in his left shoulder (a superior labrum anterior posterior "SLAP" tear), which required two surgeries. After extensive physical therapy, Brungart regained full shoulder function but continues to experience pain and avoids certain activities due to concerns about reinjuring his shoulder.

¶ 8        Brungart sued Awwad, LMZ Transportation Inc. (his company), and I & L Transportation Inc., alleging Awwad negligently drove through a red light, causing the accident. Brungart amended his complaint and later withdrew a claim of spoliation of evidence, asserting that Awwad, LMZ, or I & L lost or destroyed a dashcam video of the accident.

¶ 9        Defendants denied the negligence allegations and raised two affirmative defenses. They asserted that Brungart was contributorily negligent and that his failure to exercise ordinary care was the sole proximate cause of the accident, or in the alternative, that Brungart was more than 50% at fault for the accident, barring him from recovery. 735 ILCS 5/2-1116 (West 2024).

¶ 10                                                    Trial

¶ 11        Awwad began working for I & L in 2018, owned his truck, and drove locally and regionally. The truck had a working dashcam but not an electronic logging device (ELD).

¶ 12        On the day of the accident, Awwad was driving his semi northbound on Route 53 in the far right-hand lane at about 40 mph. He testified that as he approached a traffic light, it changed from green to yellow. He began to slow down but did not slam on the brakes because he did

not want the truck to jackknife. He honked four or five times and tried to stop as safely as possible. When he entered the intersection, the light had just turned red, there was no traffic, and he was traveling about 25 mph. He asserted that his expert's reconstruction video, which shows the light was red for five seconds before he entered the intersection, was wrong.

¶ 13     Awwad uploaded the dashcam video of the accident to his home computer and sent it to David Fields, I & L's independent safety consultant. About a year after the accident, and before Brungart filed his complaint, Awward's computer crashed, and he discarded it.

¶ 14     David Fields was an independent safety consultant to I & L for about four or five years between 2016 and 2022. His main contact was I & L's owner, Nesreen (Nancy) Naser. He testified that he met with her weekly as well as communicated with her by text and phone. Fields explained that truck drivers maintain paper or electronic logs to verify they do not drive more than 11 hours a day, the federal limit. Federal regulations require trucks manufactured after 2000 have an ELD unless the truck travels only locally. ELDs gather data about the driver's speed, acceleration, braking, and driving time. Fields installed ELDs on I & L's trucks in late 2017. Although Awwad started working for I & L in 2018, Fields would have installed an ELD in his truck, and it should have had one on the day of the accident.

¶ 15     When Naser called Fields about the accident, he told her to have Awwad go for a blood alcohol content (BAC) test, as required by federal law. Fields identified Naser's signature on the BAC request form. He did not know the test results. (Awwad filed a pre-trial motion *in limine* to bar references to the BAC test. The trial court reserved ruling. Defendants never objected to questioning on the BAC test.)

¶ 16     A few days after the accident, Awwad texted Fields the dashcam video showing "Awwad driving, going through the traffic signal, and striking the car." Fields forwarded the video to

Naser and to one of I & L's attorneys, whose name he couldn't recall. After Fields stopped working for I & L, he got a new phone and did not keep the video.

¶ 17    Naser testified that she has owned I & L since January 2021, after taking over the company from her brother. She had no prior involvement with the company and did not know David Fields before then. Naser received the dashcam video but did not watch it. She forwarded it to "Steve," a lawyer at the firm representing her company, but could not remember his last name. Naser denied that Fields installed ELDs on I & L's drivers' trucks and said her drivers use paper logs, even though federal law requires some drivers have an ELD.

¶ 18    To refute Naser's assertion that she was not involved with I & L when the accident occurred, Brungart's attorney showed Naser the BAC request form. Naser acknowledged her name was on it but denied the signature was hers, suggesting it could have been forged. In response to a question from Brungart's attorney, she said she did not know the results of the BAC test. The record shows that Awwad's attorney did not object.

¶ 19    Brungart testified that he works seasonally as an irrigation technician. On the date of the accident, he was driving a work pickup truck southbound on Route 53, heading back to his employer's shop. When he approached an intersection, the light was green. He stopped in a designated left-hand turn lane and waited for approaching traffic to clear before turning. The light turned yellow, then red. Brungart did not turn because an SUV was approaching from the north, and he could tell if it would stop. After the SUV cleared the intersection, Brungart began turning left at about 10 miles per hour. He did not see Awwad's truck enter the intersection until just before it collided with his pickup, traveling about 45 mph. Brungart said there was nothing he could have done to avoid the collision.

¶ 20        On cross-examination, Brungart acknowledged he was looking at the SUV that drove through the red light and could have seen Awwad's truck had he looked. He was aware that the law required him to yield to oncoming traffic when making a left turn and agreed that he could not assume oncoming traffic would stop.

¶ 21        The impact caused Brungart's vehicle to spin 180 degrees and the airbags to deploy, which caused a burning pain in his wrist. The next day, he went to the emergency room with pain in his chest and shoulder and tingling in his leg and fingers. He was referred to an orthopedist, who ordered an MRI and prescribed physical therapy.

¶ 22        About six months later, dissatisfied with his progress in physical therapy, Brungart saw Dr. Giridhar Burra, an orthopedic surgeon. Burra diagnosed Brungart with a SLAP tear in his left shoulder and recommended surgery. Burra performed laparoscopic surgery on October 8, 2020. Three days later, Brungart felt sharp pain in his shoulder when putting on his pants and went back to Burra, who performed a second, more invasive, surgery a few weeks later to reattach the biceps tendon. The second surgery was more painful and had a longer recovery, requiring about 40 physical therapy visits. Brungart could not use his arm for months and did not return to work until April 2021.

¶ 23        At the time of trial, Brungart had a wife and three children, including a 21-year-old son with special needs who uses an electric wheelchair and help with stairs. Brungart's injuries place additional stress on his family as his wife cannot lift their son. Brungart no longer does certain activities like playing basketball, for fear of reinjuring his shoulder, and experiences pain during other activities, including repairing his car and performing some work tasks. He has persistent pain of varying severity since the accident. He does not take pain medication,

preferring to avoid pills, and remains concerned about his shoulder's long-term health, especially as it relates to caring for his son.

¶ 24        Andrew Gonzalez, who witnessed the accident, had worked for UPS for over seven years as an on-road supervisor and provides safety training for UPS truck drivers. Over objection, he testified about "stale green lights," which he discusses in his safety training. Gonzalez explained that a "package driver [or] semitruck driver has a point of decision for approaching a relatively long green light ***. [I]f it turns yellow, you can proceed through the intersection without hesitation or acceleration. But if you're behind the point of decision, which, *** could be ***as soon as you hit *** a left turn lane *** and the light turns yellow, I will be able to bring my car to a smooth stop behind the stop line."

¶ 25        Gonzalez was traveling north on Route 53. As he approached an intersection, the light was green and then turned yellow. Gonzalez stopped. Brungart's pickup was in front of him, and in his passenger side mirror, he saw Awwad's truck "cruising through" the intersection. He did not see Awwad attempt to slow down or hear a horn. Awwad was traveling about 40 to 45 mph, and the light was red for two or three seconds when Awwad entered the intersection and collided with Brungart's pickup. Gonzalez said Brungart could not have done anything to avoid the collision because once he started turning, he was "at the point of no return."

¶ 26        On cross-examination, Gonzalez acknowledged he does not have a commercial driver's license and cannot drive a semi. He also agreed that he could not see Awwad's brake lights.

¶ 27        Dr. Burra testified by evidence deposition. Burra diagnosed Brungart with a SLAP tear and operated on the shoulder laparoscopically. A second, more invasive procedure, a few weeks later, reattached Brungart's biceps tendon, which had become detached after surgery. Burra found no degenerative conditions in Brungart's shoulder indicating a pre-existing injury. Burra

cleared Brungart to return to work in March 2021, his range of motion and shoulder function restored. And that still to have shoulder pain was reasonable.

¶ 28 At the close of Brungart's case, he withdrew his spoliation claim. Awwad sought a directed verdict, arguing Brungart failed to prove causation as a matter of law because his left turn into oncoming traffic was the sole proximate cause of the accident. The court denied the motion.

¶ 29 At the jury instructions conference, Awwad objected to Brungart's proffered instruction regarding missing evidence as to the dashcam and ELD on the grounds that the instruction was warranted only if there was a spoliation claim. The trial court disagreed, finding that the dashcam was in Awwad's control and would have been offered if favorable to him and that the existence of the ELD was a question of fact and was also under Awwad's control. The court also denied Awwad's objection to the inclusion of damages for future loss of normal life and future pain and suffering, finding that based on the nature of Brungart's injuries, the jury could determine, without expert testimony, whether they would persist in the future.

¶ 30 During closing arguments, Brungart's attorney referenced the blood alcohol test, stating, "Where are the results of the BAC test? We don't know." According to Awwad, Brungart's attorney also improperly implied that his truck had an ELD and that it was withholding its data. Specifically, Awwad points to her description of the ELD data as "missing evidence" and her suggestion that it would have "shown his speed, sudden braking, and his hours," and eliminated defendants' narrative that the accident was Brungart's fault.

¶ 31 After deliberations, the jury returned a verdict in favor of Brungart for $2,287,167.78. The parties stipulated that Brungart incurred $97,558.82 in reasonable medical expenses and $48,608.96 in lost earnings, amounts the jury awarded. The jury also awarded $530,000 for loss of normal life, $360,000 for loss of normal life in the future, $565,000 for pain and

suffering, $660,000 for future pain and suffering, and $25,000 for disfigurement. The jury allocated 5% fault to Brungart, reducing his damages to $2,172,809.38.

¶ 32     Brungart moved for pre-and post-judgment interest. The trial court granted Brungart's motion and entered a final judgment of $2,549,793.69.

¶ 33     Defendants filed a post-trial motion seeking a JNOV or a new trial, arguing Brungart's failure to yield to oncoming traffic was the sole proximate cause of the accident. Defendants also argued for a new trial because the trial court erred in admitting certain evidence, instructing the jury, and allowing certain statements in closing arguments. Alternatively, defendants sought a new trial on damages only or a remittitur, arguing (i) the court erred in allowing evidence and argument on loss of normal life damages absent expert testimony or other evidence that Brungart was unable to perform previous activities and (ii) the future non-economic damages award was unfounded and excessive. The trial court denied the motion.

¶ 34                                     Analysis

¶ 35     As a preliminary matter, we address Brungart's motion to strike an argument he contends defendants raised for the first time in their reply brief, namely that Brungart failed to establish that an ELD was present in Awwad's truck at the time of the accident. We agreed to take the motion with the case. In response, defendants asserted they raised the issue at trial by objecting to the missing evidence instruction and addressed it in their post-trial motion and opening brief.

¶ 36     Generally, arguments not raised before the trial court are forfeited and cannot be raised for the first time on appeal. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006). Our review of the record, however, indicates that defendants raised this argument, albeit vaguely, at trial. In objecting to the missing evidence instruction, Awwad's attorney stated, "I don't think there's foundation established that he *** had an ELD." And in their

post-trial motion, defendants argued that ELDs are required for regional routes and Brungart failed to "establish Awwad was on a regional route at the time of the accident." This is sufficient to preserve the issue for appeal. Thus, defendants have not forfeited the argument that Brungart failed to show Awwad had an ELD at the time of the accident.

¶ 37                                    Proximate Cause

¶ 38        Turning to the merits, defendants contend they are entitled to a JNOV or a new trial because the evidence showed that Brungart's decision to turn left without yielding to oncoming traffic was the proximate cause of the accident.

¶ 39        A court will only grant a JNOV when the evidence, taken in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict can stand. *Ries v. City of Chicago*, 242 Ill. 2d 205, 215 (2011). The standard for a JNOV "is a high one." *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 106 (2006). A "[JNOV] is inappropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented." *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006) (quoting *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351 (1995)). A decision on a motion for [JNOV] is reviewed *de novo*." *Ries*, 242 Ill. 2d at 215.

¶ 40        We review a trial court's decision to deny a motion for a new trial for an abuse of discretion. *Bosco v. Janowitz*, 388 Ill. App. 3d 450, 461 (2009). For a new trial, the verdict must be contrary to the manifest weight of the evidence. *Id*. That occurs "when the opposite conclusion is clearly evident or when the jury's findings prove to be unreasonable, arbitrary, and not based upon any of the evidence." *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 179 (2006). To determine whether the trial court abused its discretion, this court considers

whether the evidence supports the jury's verdict and whether the losing party received a fair trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56 (1992).

¶ 41    Defendants argue they are entitled to a JNOV or a new trial because Brungart's decision to turn left at a red light without yielding to oncoming traffic, as required by statute, was the proximate cause of the accident. Defendants cite section 11-902 of the Illinois Vehicle Code: "The driver of a vehicle intending to turn to the left within an intersection * * * shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard, but said driver, having so yielded may proceed at such time as a safe interval occurs." 625 5/11-902 (West 2024).

¶ 42    Defendants assert that Brungart acknowledged the statute requires a driver making a turn to yield the right of way to oncoming traffic and that he could not assume that northbound traffic was going to stop. Further, had Brungart looked at Awwad's truck rather than the SUV that drove through the red light ahead of Awwad, the accident would not have happened.

¶ 43    The trial court instructed the jury on the requirements of section 11-902 of the Vehicle Code. The court also instructed the jury as to other duties imposed by Illinois law including that "speed must be decreased as it may be necessary to avoid colliding with any vehicle on the highway in compliance with legal requirements and a duty of all persons to use due care" (625 5/11-601(a) (West 2024)) and that "vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line and shall remain standing until an indication to proceed is shown."625 ILCS 5/11-306(c)(1) (West 2024).

¶ 44    Further, the court instructed the jury that "If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, the parties

were negligent before and at the time of the occurrence." Defendants did not object to these instructions, and they were properly given, as courts have held that a violation of a statute is *prima facie* evidence of negligence but not negligence *per se*. *Fox v. Ameren Illinois Co.*, 2022 IL App (4th) 210633, ¶ 34. Even if the jury decided that one or both parties violated a statute, it was still required to decide whether the violation proximately caused the injury. *Id*.

¶ 45    Viewing the evidence in the light most favorable to Brungart, the evidence did not so overwhelmingly favor defendants that the verdict cannot stand. Awwad admitted he entered the intersection after the light turned red, which was corroborated by Gonzalez, who testified that Awwad did not slow down or honk his horn as he entered the intersection. A reconstruction video prepared by defendants' experts showed that the light was red for five seconds before Awwad entered the intersection. Further, David Fields testified that the dashcam video showed Awwad drove through a red light and that Brungart was not responsible for the accident.

¶ 46    Defendants' reliance on *Johnson v. May*, 223 Ill. App. 3d 477 (1992) and *In re Estate of Case*, 2016 IL App (2d) 151147 is unpersuasive.

¶ 47    In *Johnson*, the defendant, on a secondary county road drove through a stop sign and collided with plaintiff's truck, causing serious injuries. *Id*. at 479. The jury returned a verdict for the plaintiff, attributing 50% of the fault to him. *Id*. at 483. The appellate court reversed, finding that "[e]ven when all of the evidence is viewed in the light most favorable" to the defendant, "there is no way [the plaintiff] could rationally be regarded as having contributed in any way to the accident." *Id*. at 485. The plaintiff had the right to expect the defendant to obey the stop sign and yield the right-of-way, and had no reason to believe that danger existed until the defendant entered the intersection and, by then, he could not reasonably have done anything to avert the collision. *Id*. at 484.

¶ 48    In *In re Case*, the plaintiff drove through a stop sign and made a left-hand turn onto a highway, striking defendant's truck, which had no traffic signal. The trial court granted summary judgment in favor of the defendant truck driver. *In re Case,* 2016 IL App (2d) 151147 ¶¶ 12, 15. The appellate court affirmed, finding that only the plaintiff breached her statutory duties by failing to stop and yield the right of way to the truck and no evidence suggested that the defendant breached any statutory duties. *Id*. ¶¶ 45, 46.

¶ 49    Defendants argue that, like the defendant in *Johnson* and the plaintiff in *Case*, Brungart breached his duties by failing to yield the right of way, and Awwad could not have done anything to avoid the accident. Not so. Unlike the truck drivers in *Johnson* and *Case*, who had no traffic sign to obey, Awwad had a traffic light. Even if the jury found that Brungart was partially negligent by failing to yield to oncoming traffic, it could conclude that by driving through a red light, Awwad was overwhelmingly at fault.

¶ 50    Based on the evidence, defendants have not met the high standard required to grant a JNOV motion, as reasonable minds could conclude Brungart was 5% at fault. For the same reasons, the trial court did not abuse its discretion in denying defendants' motion for a new trial.

¶ 51                                    Evidentiary Rulings

¶ 52    Defendants contend the trial court's erroneous evidentiary rulings deprived them of a fair trial. They identify three errors: (i) admitting blood alcohol content evidence, (ii) admitting evidence about the ELD and giving the jury a missing evidence instruction about the ELD and dashcam video, and (iii) allowing eyewitness Gonzalez, a layperson, to offer opinion testimony. We address each in turn.

¶ 53                          *Blood Alcohol Content Test Evidence*

¶ 54        Defendants argue the trial court's decision allowing Brungart to present evidence, argument, and innuendo about his blood alcohol content test is grounds for a new trial.

¶ 55        A court's evidentiary rulings are not reviewable on appeal unless properly preserved. *Thornton v. Garcini*, 237 Ill. 2d 100, 106 (2009). When the court issues rulings on motions *in limine* before trial, those rulings are interlocutory and remain subject to reconsideration throughout the trial. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010). So denial of the complaining party's pretrial motion to exclude evidence is not sufficient to preserve the issue for appeal. *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002). The complaining party must also make a contemporaneous objection at trial when the evidence is introduced to allow the court to revisit its ruling. *Id*. Failure to object results in forfeiture of the issue on appeal. *Id*. Defendants acknowledge they did not object at trial, but that we should review it as plain error.

¶ 56        Although the plain-error doctrine applies frequently in criminal cases, in limited circumstances it may apply in civil cases. *Arient v. Shaik*, 2015 IL App (1st) 133969; *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 855-56 (2010) (citing *Palanti v. Dillon Enterprises, Ltd.*, 303 Ill. App. 3d 58, 66 (1999)). The cases that have applied the plain-error doctrine restrict it to situations where the act complained of was a prejudicial error so egregious as to deprive the complaining party of a fair trial and substantially impair the integrity of the judicial process. *Arient*, 2015 IL App (1st) 133969, ¶ 37. Use of the plain-error doctrine in civil cases should be "exceedingly rare." *Id*. (citing *Wilbourn*, 398 Ill. App. 3d at 856). We must decide whether this case constitutes one of those "exceedingly rare" civil cases. *Id*.

¶ 57        Defendants contend that because of the inflammatory nature of intoxication evidence, simply mentioning it at trial without presenting evidence that Awwad was intoxicated was so prejudicial that it deprived them of a fair trial. We disagree.

¶ 58        Brungart initially raised the BAC test to impeach Nancy Naser's testimony that on the day of the accident, she played no role in I & L. Brungart's attorney showed her a form authorizing the test that included her typewritten name and title and was purportedly signed by her. Naser maintained that it was not her signature, even though it was nearly identical to her signature on another form she acknowledged signing, and suggested that it was perhaps forged. Brungart's attorney then showed the form to David Fields, who testified that he knew Naser's signature and that it was on the form. This was a proper impeachment.

¶ 59        The other reference to the BAC test was in the closing argument, when Brungart's attorney reiterated that Naser said she did not work for I & L before 2021 but that her name appeared on the BAC test form. The attorney added, "Where are the results of the BAC test? We don't know." These references to a BAC test without any other testimony, statements, or suggestions throughout the trial that Brungart was intoxicated did not deprive defendants of a fair trial. Thus, there is no reason to review these questions and statements for plain error.

¶ 60                            *Electronic Logging Device Evidence*

¶ 61        We similarly decline to review the admission of evidence and testimony about ELDs for plain error.

¶ 62        Defendants assert that Awwad testified that his truck did not have an ELD installed on the date of the accident and that Fields only said that the truck "should have" had one because they were required after 2000 for trucks that traveled regionally, and he installed them on I & L's fleet in 2018. Defendants note that Fields did not affirmatively state that Awwad's truck had one on that day or that its absence caused the accident. These assertions are accurate, but they only show the jury was presented with conflicting testimony, which they could weigh as a question of fact. The testimony was not so prejudicial that it denied defendants a fair trial or

substantially impaired the integrity of the judicial process to warrant plain error review. *Arient*, 2015 IL App (1st) 133969, ¶ 37.

¶ 63                                    *Missing Evidence Instruction*

¶ 64        Defendants contend they were prejudiced by a missing evidence instruction on the dashcam video and the ELD.

¶ 65        The missing-evidence instruction, IPI Civil (2024) No. 5.01, is given after the trial court determines that a party would likely have produced evidence unless it was unfavorable to them. *Myre v. Kroger Co.,* 176 Ill. App. 3d 160, 164-65 (1988). The instruction is available when: (i) evidence under the control of the party against whom the instruction is offered could have been produced by reasonable diligence; (ii) the evidence was not equally available to the adverse party; (iii) a reasonably prudent person would have produced the evidence if they believed it favored them; and (iv) no reasonable excuse for the failure to produce has been shown. *Montgomery v. Blas*, 359 Ill. App. 3d 83, 86 (2005). The unproduced evidence must not be cumulative. *Kersey v. Rush Trucking, Inc.,* 344 Ill. App. 3d 690, 696 (2003). We reverse for an abuse of discretion. *Id*.

¶ 66        Defendants argue the trial court should not have given the missing evidence instruction because the facts are not in dispute, as Awwad acknowledged he drove through the red light, so the dashcam and ELD would be cumulative. We disagree. The testimony about how long after Awwad entered the intersection was conflicting: Awwad said it changed to red as he entered, while other witnesses said it was up to five seconds after the light changed. Witnesses also disagreed about how fast Awwad was traveling and whether he tried to stop. The dashcam and ELD could have clarified these discrepancies.

¶ 67        We also disagree that defendants offered a reasonable excuse for not producing the dashcam video. Although Awwad and Naser testified they no longer had access to their computers and phones, both Naser and Fields said they forwarded the video to the law firm representing I & L. No explanation was given why the law firm did not produce it.

¶ 68        Lastly, defendants argue that the missing evidence instruction was inappropriate and lacked evidentiary support because Brungart could not establish an ELD in Awwad's truck on the day of the accident. As the trial court found, the presence of an ELD presented a question of fact. If the jury found that Awwad's truck had one, it could find that it was under defendants' and not the plaintiff's control, and that they did not produce it since it was unfavorable to them. Thus, giving the missing evidence instruction did not abuse the trial court's discretion.

¶ 69                                     *Gonzalez Testimony*

¶ 70        Defendants contend the trial court erred in allowing Andrew Gonzalez to testify about his safety training at UPS and about what a truck driver should do when a traffic light turns yellow (the "stale green light" issue) without being qualified as an expert. They further argue that the trial court erred in allowing Gonzalez to opine on an ultimate issue, namely, whether Brungart could have done anything to avoid the accident.

¶ 71        While not "permitted to testify to a legal conclusion at issue *** a lay witness can express an opinion on an issue in a cause if that opinion will assist the trier of fact." *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 44. "[A]s long as this opinion is based on the witness's personal observation, is one that a person is generally capable of making and is helpful to a clear understanding of an issue at hand, it may be permitted at trial." *Id*. The decision to admit lay opinion testimony lies within the trial court's discretion, which we review for abuse of discretion. *Id*.

¶ 72      Gonzalez, an independent witness to the accident, stated that Awwad entered the intersection when the light was red and did not attempt to slow down. Based on this and his experience training UPS drivers on what to do when approaching a traffic light, which he gained as a UPS trainer, he did not think Brungart could have done anything to avoid the accident. This testimony helped the jury better understand which driver was at fault, and the trial court did not abuse its discretion by allowing it.

¶ 73      The trial court's evidentiary rulings were not an abuse of discretion, and so not individually or cumulatively grounds for a new trial.

¶ 74                                            Damages

¶ 75      Defendants contend they are entitled to a new trial on damages or a remittitur because (i) the trial court erred in allowing evidence, argument, and instructions on future damages, including loss of normal life/disability damages absent expert medical testimony, and (ii) the damages award was excessive. We apply an abuse of discretion standard to both. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 82.

¶ 76                                     *Future Damages*

¶ 77      As to defendants' contention that expert testimony was required on future damages, we agree with Brungart that defendants' failure to raise that issue before the trial court could constitute waiver. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 17 (issue cannot be raised for first time on appeal if not raised before or considered by trial court). But in making its ruling, the court discussed the issue. So we will address it.

¶ 78      As the trial court noted, in *Maddox v. Rozek*, 265 Ill. App. 3d 1007 (1994), the appellate court has held that lay testimony will suffice to warrant a jury instruction on future pain and suffering when the existence of the plaintiff's ongoing pain and suffering would be readily

apparent from the nature of the injury. See *Maddox*, 265 Ill. App. 3d at 1010-11. "Where future pain and suffering is not apparent from the injury itself, or is subjective, the plaintiff must present expert testimony that pain and suffering is reasonably certain to occur in the future to justify the instruction." *Id*. at 1011.

¶ 79　　　Thus, the test requires first looking at whether a jury could objectively determine permanency based on the nature of the injury alone. If the nature of the injury allows for an objective determination of permanency, then no expert medical testimony is required, sometimes, even the plaintiff's testimony. But if the nature of the injury does not allow for an objective determination, then either expert medical testimony is needed or lay testimony coupled with an objective manifestation of the injury's permanency or sustained pain and suffering. *Griffin v. Prairie Dog Limited Partnership*, 2019 IL App (1st) 173070, ¶ 94.

¶ 80　　　The trial court determined that a jury could objectively determine the permanency of a labrum tear and its related pain without expert testimony. We agree. Our supreme court held in *Ziencina v. County of Cook*, 188 Ill. 2d 1 (1999) that evidence on the nature of the plaintiff's injuries, combined with his and his wife's testimony, sufficed. *Id*. at 16. There, the plaintiff suffered rib fractures, bruised lungs, and was diagnosed with respiratory distress syndrome. *Id*. at 8. The plaintiff and his wife testified that he continued to suffer, which affected his work, tired him easily, and made physical contact painful. *Id*. at 7. In the medical expert's deposition, she testified that while the plaintiff's respiratory distress syndrome had resolved before discharge and most patients had few residual problems after recovery, it was possible to continue to experience pain. *Id*. at 8.

¶ 81　　　Here, the trial court found expert testimony unnecessary because the jury could objectively determine the permanency of the SLAP tear and two surgeries and their related pain and

suffering. The jury heard from Dr. Burra that while Brungart's range of motion, strength, and function were fully restored, for Brungart to continue to have shoulder pain was reasonable. Brungart corroborated that assessment, stating that he regularly had pain doing certain daily activities and refrained from some activities for fear of re-tearing his labrum. Thus, the trial court did not abuse its discretion in giving a jury instruction on future pain and suffering.

¶ 82                            *Excessive Non-Economic Damages*

¶ 83        Defendants contend the non-economic damages award is excessive.

¶ 84        Generally, the jury has discretion to decide the amount of the damages. *Dahan v. UHS of Bethesda, Inc.*, 295 Ill. App. 3d 770, 781 (1998). And we "will not lightly substitute [our] opinion for the judgment rendered in the trial court." *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997). A court will order a remittitur or, if the plaintiff does not consent, a new trial, when the verdict is excessive. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 412-13 (1997). Our supreme court has listed factors that may indicate an excessive verdict: (i) exceeding the range of fair and reasonable compensation, (ii) resulting from passion or prejudice, or (iii) so large it shocks the judicial conscience. *Richardson*, 175 Ill. 2d at 113. Remittitur will not be ordered when an award " 'falls within the flexible range of conclusions which can reasonably be supported by the facts.' " *Best*, 179 Ill. 2d at 412. (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 470 (1992)). In reviewing a compensatory damages award for nonfatal injuries, a court may consider "the permanency of the plaintiff's condition, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries." *Richardson*, 175 Ill. 2d at 113-14.

¶ 85        Defendants assert that passion and prejudice drove the award because Brungart's attorney (i) inappropriately used an "anchoring" tactic to condition the jury to award more serious

damages and (ii) violated a motion *in limine* prohibiting inviting jurors to place themselves in Brungart's shoes.

¶ 86    Defendants argue that by asking for more than $2 million in non-economic damages in his closing statement, Brungart's attorney improperly "anchored" the jury to render an excessive verdict "inordinately influenced by an arbitrary and irrelevant number." See Chapman & Bornstein, *The More You Ask For, the More You Get: Anchoring in Personal Injury Verdicts*, 10 Applied Cognitive Psychology 519 (1996)) (explaining how attorneys use anchoring to suggest damage amounts by referring to objects or values with no rational connection to facts).

¶ 87    Defendants cite a Texas case, *Gregory v. Chohan*, 670 S.W.23d 546 (Tex. 2023), where plaintiff's attorney, seeking damages for the family of a truck driver killed in a highway accident, made analogies to a $71 million Boeing F-18 fighter jet and a $186 million painting by Mark Rothko. *Id*. at 557. The Texas Supreme Court reversed the jury's $15 million award for mental anguish and suffering, finding "unsubstantiated anchors" that had nothing to do with the emotional injuries suffered by the plaintiff and could not rationally connect the extent of the injuries to the amount awarded. *Id*.

¶ 88    Defendants fail to assert anything similar occurring here. Brungart's attorney asked the jury for $2.05 million in damages, consisting of $530,000 for loss of normal life, $330,000 for loss of future normal life, $530,000 for pain and suffering, and $660,000 for future pain and suffering. He argued why Brungart's injuries warranted those amounts and made no reference to objects or things with no rational connection to the facts. Defendants' contention fails.

¶ 89    Defendants also claim Brungart's attorney violated a motion *in limine*, asking the jury to place themselves in Brungart's shoes, by saying, "On November 14, 2019, if you knew all these things were going to happen to you, would it be worth it to you?" Notably, defendants

did not object during Brungart's closing argument, indicating waiver. More significantly, defendants selectively quote. When read in context, the "you" refers to Brungart, not the jurors. The attorney suggested that if Brungart had known a semitruck would have injured him, "Jeff would not have gone to work that day." That did not violate the motion *in limine*.

¶ 90    Lastly, we cannot say the award to Brungart "shocks the conscience" or lacks support in the evidence. Brungart testified to the pain and suffering he endured and the surgeries, which took almost 18 months to heal. Although he has regained shoulder function, he is in pain that varies in severity and cannot do some activities. He also said his injury has placed additional stress on his family due to his son's disabilities. As noted, we will not lightly substitute our judgment for that of the trial court. Nor order a remittitur when the jury award "falls within the flexible range of conclusions which can reasonably be supported by the facts." *Best*, 179 Ill. 2d at 412. This record supports the award and, thus, the trial court did not abuse its discretion in denying defendants' motion for a new trial on damages or a remittitur.

¶ 91    Affirmed.